Ampersand Hotel Company, Appellant, *v.* Home Insurance Company, Respondent, Impleaded with Another.

Practice — motion to dismiss defense as insufficient in law — fire insurance — alleged conspiracy of insured to burn property — when insufficient as a defense under terms of policy.

If a separate defense is insufficient in law it is proper, when it has not been demurred to, to object to it at the trial and to move for its dismissal, and, in a proper case, the motion may be granted, in order that the ground to be covered by the evidence upon the trial may be seasonably restricted.

In an action to recover the amount of a policy of fire insurance upon hotel buildings and contents, owned by a corporation, which were destroyed by fire, an allegation in the answer, that the principal stockholder of the plaintiff, who was also an officer thereof and its manager, had, shortly before the fire, entered into a fraudulent conspiracy wherein it was planned that some person or persons should be procured "to cause the destruction of the property by fire, to enable the plaintiff to recover * * * the insurance; * * * and that while said plan and conspiracy was still in existence and in process of accomplishment, the said fire occurred," does not constitute a good defense under the provision of the policy that it should be void "in case of any fraud touching any matter relating to this insurance or the subject thereof;" nor does such allegation constitute a good defense under the provision that the policy should be void "if the hazard be increased by any means within the control or knowledge of the insured."

*Ampersand Hotel Co.* v. *Home Ins. Co.*, 131 App. Div. 361, reversed.

(Argued May 12, 1910; decided May 31, 1910.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 23, 1909, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William B. Ellison* and *Arnold L. Davis* for appellant. It was not error for the court below to entertain the plaintiff's motion made at the trial to strike out the defense of conspiracy. (*Rankin* v. *Bush-Brown,* 108 App. Div. 294; *Rankin* v. *Bush,* 108 App. Div. 295; *Fox* v. *Vizethann,* 117 App. Div. 127.) It was not error for the trial court to hold that the defense of conspiracy was insufficient in law. (*People* v. *Cook,* 8 N. Y. 67; *N. Y. C. & H. R. R. R. Co.* v. *Reeves,* 41 Misc. Rep. 490; *Douglas* v. *Winslow,* 20 J. & S. 439; *Hutchins* v. *Hutchins,* 7 Hill, 104; *Bayles* v. *Vanderveer,* 11 Misc. Rep. 207; *Place* v. *Minster,* 65 N. Y. 89; *Brackett* v. *Griswold,* 112 N. Y. 454; *Verplanck* v. *Van Buren,* 76 N. Y. 247; *Colyer* v. *Guilfoil,* 47 App. Div. 302; *Lee* v. *Kendall,* 56 Hun, 610; *B. L. Co.* v. *Everest,* 30 Hun, 586.) There was no "increase of hazard" within the meaning of the policy. (*Harper* v. *A. F. Ins. Co.,* 59 N. Y. 1; *Smith* v. *M. & T. F. Ins. Co.,* 32 N. Y. 399; *Whitney* v. *B. R. Ins. Co.,* 72 N. Y. 117; *Roberts* v. *C. Ins. Co.,* 3 Hill, 500; *Grant* v. *H. Ins. Co.,* 5 Hill, 10; *Eager* v. *F. Ins. Co.,* 71 Hun, 352; 148 N. Y. 726; *Le Roy* v. *P. F. Ins. Co.,* 39 N. Y. 56.)

*Hartwell Cabell* for respondent. It was error for the court below to entertain plaintiff's motion made at the trial to strike out the defense of conspiracy. (*Smith* v. *Countryman,* 30 N. Y. 655; *Walter* v. *Fowler,* 85 N. Y. 621; *Lathrop* v. *Godfrey,* 3 Hun, 739; *Moss* v. *Witteman,* 4 Misc. Rep. 81.) The trial court erred in holding that the defense of conspiracy was insufficient in law. (*Dohman* v. *N. F. Ins. Co.,* 196 Wis. 56; *Fowler* v. *P. Ins. Co.,* 35 Oreg. 559; *V. F. & M. Ins. Co.* v. *Vaughan,* 88 Va. 382; *Sternfeld* v. *Park Ins. Co.,* 50 Hun, 262; *Anibal* v. *Ins. Co. of N. A.,* 84 App. Div. 634; *Imperial Ins. Co.* v. *Geering,* 81 Ill. 238; *Kyte* v. *C. U. Ins. Co.,* 149 Mass. 116; *Williams* v. *P. Ins. Co.,* 57 N. Y. 274; *Cole* v. *G. Ins. Co.,* 99 N. Y. 36; *Daniels* v. *E. Ins. Co.,* 50 Conn. 551.)

GRAY, J.  The plaintiff-brought this action to recover the amount of a policy of insurance issued by the defendant, the Home Insurance Company, upon its hotel buildings and contents, which were destroyed by fire.  Among other defenses interposed by the answer of the insurer was this, in brief: That the principal stockholder of the plaintiff, who was also its treasurer and a director and who had the management of its affairs, at a time shortly prior to the occurrence of the fire, had entered into a fraudulent conspiracy with one Van de Wall and others, " wherein it was planned that said Van de Wall should procure some person or persons to cause the destruction of the property by fire, to enable the plaintiff to recover  *  *  *  the insurance;  *  *  *  and that while said plan and conspiracy was still in existence and in process of accomplishment, the said fire occurred."  When the case came on for trial, the plaintiff moved to strike out this separate defense, as insufficient in law, and the motion was granted.  The trial resulted in a decision in favor of the plaintiff; but the Appellate Division reversed the judgment and ordered a new trial of the action.  By reference to the opinion below, it appears that the reason moving the learned justices to the reversal was the action of the trial court in striking out the defense, to which I have alluded.

That presents the serious question in this case, upon which, alone, a difference of opinion exists in this court.  So far as the practice is concerned, I may say that we do not think that the trial court committed any error in entertaining the plaintiff's motion.  If the defense was insufficient in law, it was proper, when it had not been demurred to, to object to it at that time and to move for its dismissal.  The advantage in such practice is that the ground to be covered by the evidence upon the trial is, seasonably, restricted.

The question whether the defense was a good one turns upon two provisions of the policy.  The first one provides that the policy should be void " in case of any fraud  *  *  * touching any matter relating to this insurance or the subject thereof."  I do not think that there was any actionable fraud,

32

within the meaning of the policy, in the fact alleged in this defense; because, whatever the evil design, nothing — no act — was done touching the insured property, or the contract of insurance. There was neither some fraudulent transaction working, or tending to work, wrong, or injury; nor did the conspiracy to defraud get beyond the stage of a mere plan to do something. A fraud was intended, as we must assume; but the intention, not being connected with any injury, remained a mere mental project. A conspiracy, to be the subject of legal complaint, must reach the stage of development where an overt act is committed, or some actual damage is occa-sioned. It must be put in execution and not remain in plan. It is not like a case where insurance is procured with a fraudulent intent on the part of the assured; for that would be insurance against knavery. If this defense asserts the truth, the question is how could an afterthought, an evil design later conceived, to burn up the property, which never reached the point of anything done in accomplishment, be deemed to have affected the risk? The contract was unaf-fected, the subject of the insurance remained the same and no liability of the insurer was increased.

The other provision of the policy is that it should be void "if the hazard be increased by any means within the control or knowledge of the insured." I do not think that there was any increase of the hazard. I take that language as limiting the meaning of the provision to a case where by some act done to the property, which the assured knew of, or could have prevented, the company's risk had been increased. Ordinarily, we understand, and so the decisions run, that the hazard of insurance is increased when the risk is changed by some new use of, or some other burden placed upon, the property; that is to say, when the physical *status*, or condi-tion, of the subject of insurance is rendered, by some act of the insured, other than what it was was when the insurance was applied for and the application acted upon. It is said in May on Insurance, (section 219), that the insurance "must be presumed to be made with reference to the character

of the property insured, and to the owner's use of it in the ordinary way, and for the purpose for which such property is ordinarily held and used, or to cover risks incident to such use." Again, the same author, in speaking of the provision against any alteration, or change, in the situation, or circumstances, affecting the risk, says, (section 218), that it "binds the assured not only not to make any alteration or change in the structure or use of the property, which will increase the risk, but prohibits him from introducing any practice, custom, or mode of conducting his business which would materially increase the risk, and also from discontinuing any precaution represented in the application to have been adopted and practiced with a view to diminish the risk." In Joyce on Insurance, (section 2207), the author, when referring to the provision against an increase of risk by the acts of the insured, speaks of "*an act done* by the insured", which, "although not included in the class of specific hazards, nevertheless, avoids the policy if it increases the risk." Here, though a conspiracy, as we must assume, was entered into, it was to *execute* a plan for defrauding the insurer. The conspiracy did not come to a head. The property and the contract to insure it were unchanged and unaffected by what was a mere proposal to affect them. The purpose to burn up the property never had ceased to be a purpose within the domain of thought. It is not even alleged that the person was procured to execute the plan that was conceived. As the trial judge well suggested, the conspiracy remained but a mental conception. It was not the cause of the fire and it had no connection with it. The parties charged with conspiring had not got beyond the stage where they might change their minds and repent them of their wicked design. They might conclude, eventually, to do nothing in completion of their conspiracy.

I think that a mere intention, or plan, to do an injury is of no consequence, where no act is done to effectuate it and the party, whose interests are aimed at, is neither injured, nor exposed to loss, as the result of having put the plan into some way of execution. To allege that the conspiracy was in "proc-

ess of accomplishment", when the fire actually occurred, is not equivalent to the allegation of an overt act. It was nothing more than saying that the conspiracy was proceeding toward accomplishment. I am not aware of any case which holds that the hazard of insurance has been increased; unless some act has been done to, or about, the property, which changes it physically, or the burdens upon it, or affects its ownership.

The defendant could not sue for damages by reason of the conspiracy and, if that be true, I think it could not set it up as a defense to the performance of its contract.

Upon no other questions affecting the judgment are we divided in opinion and, for the reasons given, I advise that the order and judgment of the Appellate Division be reversed and that the judgment of the Trial Term be affirmed, with costs in both courts to the appellant.

WILLARD BARTLETT, J. (dissenting).    I cannot assent to the proposition that the formation of a conspiracy to burn an insured building, which conspiracy is *in process of accomplishment*, does not increase the hazard. The hazard referred to is the risk of destruction by fire; and according to the prevailing opinion this risk is not increased by taking steps to carry into execution a plan to destroy the building by fire. The phrase "in process of accomplishment" in the answer can only mean that steps were being taken to effect the purpose of the conspiracy. It seems to me so clear that the hazard was thereby increased that I will simply record my dissent without further discussion.

CULLEN, Ch. J., HAIGHT and HISCOCK, JJ., concur with GRAY, J.; WILLARD BARTLETT, J., reads dissenting memorandum, and WERNER and CHASE, JJ., concur.

Order reversed, etc.