<hr/>

## In re NEW YORK LIFE INS. & TRUST CO.

### (Surrogate's Court, New York County. January 15, 1913.)

1. TRUSTS (§ 298\*)—ACCOUNTING BY TRUSTEE—SCOPE OF SURROGATE'S JURISDICTION.

   While the surrogate cannot decide abstract questions, he may on an accounting by the trustee under a will for testator's daughter, a domiciled Italian by marriage, and the remaindermen, decide a motion by one respondent surviving husband of the daughter to overrule a defense set forth in the answer of an adverse respondent as insufficient in law, in that the construction of the daughter's will, made in New York as an execution of a power given by testator, was to be determined by the laws of the state of New York, and not by the laws of Italy.

   [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 417; Dec. Dig. § 298.\*]

2. COURTS (§ 202\*)—PROBATE JURISDICTION—PLEADING IN SURROGATE'S COURT —DEMURRER—ADMISSIONS.

   Although there is no such thing as a demurrer in the Surrogate's Court, a motion by a respondent in an accounting to overrule a defense set up in an answer of an adverse respondent as insufficient in law necessarily involved the admission of all the allegations of the petition so far as they are not denied by the answer, and also the admission of all of the allegations contained in such answer.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 480–486; Dec. Dig. § 202.\*]

<hr/>

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. Powers (§ 36*)—Execution—Reference to Power.

It is a general principle, both of international and municipal law, that
A will of the donee of a power of appointment making no reference to
the power would not at common law be an exercise of the power.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155;
Dec. Dig. § 36.*]

4. Wills (§ 436*)—Construction—What Law Governs.

It is a general principle, both of international and municipal law, that
wills of personalty are to be construed and effect given them by the law
of the domicile.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 947–950; Dec. Dig.
§ 436.*]

5. Powers (§ 36*)—Execution—What Law Governs.

Where a power is a purely beneficial power or assets of the donee, the
lex loci domicilii of the donee may govern the construction of the testa-
mentary execution and distribution under the will.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155;
Dec. Dig. § 36.*]

6. Powers (§ 25*)—Construction—Interest of Donee.

The beneficiary under a testamentary trust, giving her the income of
personal property for life, and with a power upon her death to appoint
the principal to her issue surviving the donor, and, if there was no sur-
viving issue, to make a testamentary appointment as to one-half of it, in
default of which it should go to the donor's next of kin, was merely the
instrument through which the donor's will was effected, and had no estate
in the property affected by his will.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 71–75; Dec.
Dig. § 25.*]

7. Powers (§ 1*)—Personalty—Construction.

Technical powers in connection with personal property are authorities
to do an act in relation to such property, or to create and revoke interests
therein or charges thereon which the owner granting the power might
himself lawfully perform.

[Ed. Note.—For other cases, see Powers, Cent. Dig. § 1; Dec. Dig. § 1.*]

8. Powers (§ 25*)—Interest of Donee—"Beneficial Power"—"Power in
Trust."

A power to appoint to others than the donee of the power is a "power
in trust," and not a "beneficial power." It is a mandate rather than the
property of the donee.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 71–75; Dec. Dig.
§ 25.*

For other definitions, see Words and Phrases, vol. 1, pp. 748–749; vol.
6, p. 5480.]

9. Powers (§ 36*)—What Law Governs—Domicile of Donor.

In respect of powers of testamentary appointment over settled property
in England or America, the law of the domicile of the donor of the power,
and not that of the donee, determines, in most cases, whether there is
sufficient testamentary execution of the donee's power of appointment.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155;
Dec. Dig. § 36.*]

10. Domicile (§ 5*)—Domicile by Operation of Law—Marriage.

The marriage of a New York lady to a subject of Italy, there domiciled,
made Italy her domicile.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 24–35; Dec.
Dig. § 5.*]

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**11. POWERS (§ 36\*)—EXECUTION—WHAT LAW GOVERNS—STATUTES.**

A lady domiciled in Italy because of her marriage to an Italian subject domiciled there, having a power of appointment under the will of her father, which was executed and probated in New York as to personal property in the hands of trustees domiciled in New York, while herself in New York, executed her will giving all her real and personal property to her husband, which will was proved in Italy and also by ancillary proceedings in New York. *Held* that, the factum of the will having been adjudicated, the execution of the power of appointment was to be construed according to the law of New York.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155; Dec. Dig. § 36.\*]

**12. POWERS (§ 36\*)—EXECUTION—REFERENCE TO POWER—STATUTES.**

Under Personal Property Law (Consol. Laws 1909, c. 41) § 18, which dispenses with the necessity of a special reference to personal property embraced in a power to bequeath, unless the intent that the will of the donee shall not operate as an exercise of the power expressly or impliedly appears, a will which gave all testatrix's real and personal property to her husband, without making any reference to her power of appointment, under her father's will, of personal property in the hands of trustees in New York, operated as an exercise of the power.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155; Dec. Dig. § 36.\*]

**13. WILLS (§ 436\*)—TESTAMENTARY DISPOSITION—WHAT LAW GOVERNS—STATUTES.**

Decedent Estate Law (Consol. Laws 1909, c. 13) § 47, which declares that, in the absence of special statutory provision, the effect of the testamentary disposition of the personal property situated in the state, and the disposition of it where not disposed by will, are regulated by the law of the state or country of which decedent at the time of his death was a resident, as well as Code Civ. Proc. § 2694, from which it was taken, are only declaratory of the prior law, and the law of the state as to the validity and effect of testamentary disposition as depending upon the rules of private international law stand as if neither section 47 nor section 2694 had been enacted.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 947–950; Dec. Dig. § 436.\*]

Accounting of the New York Life Insurance & Trust Company as executor of Edwin C. Philbrick, deceased, for the proceedings of said Philbrick as substituted trustee under the will of Adolph Hallgarten, for the benefit of Alice Franchetti. Motion by respondent (Baron) Leopold Franchetti to overrule the second defense in the answer of the adverse respondent, Eleanor von Koppenfels. Motion granted.

Motion by respondent (Baron) Leopold Franchetti to overrule and dismiss (or suppress) the second and separate or second defense (or position) set forth in the answer of respondent Eleanor von Koppenfels as insufficient in law, and on the further ground that the validity, effect, and construction of the will of (the Baroness) Alice Franchetti as an execution of the power created under the will of her father, the late Mr. Adolph Hallgarten, are to be determined by the laws of the state of New York and not by the laws of Italy; it sufficiently appearing that the donee of the power, the Baroness Alice Franchetti, was domiciled in Italy, being married to an Italian subject, domiciled in the kingdom of Italy at the time her will, in execution of the power conferred on her by her father, was executed.

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Duer, Strong & Whitehead, of New York City, for New York Life Ins. & Trust Co.

Gregory, Stewart & Wrenn (Allen S. Wrenn, of New York City, and Douglas B. Stewart, of counsel), for respondent Eleanor von Koppenfels.

Steinhardt & Goldman, of New York City (Benjamin N. Cardozo, of New York City, of counsel), for respondents Leopold Franchetti and Paul M. Warburg, as ancillary executor, etc.

FOWLER, S. This is a very interesting matter, and extremely well argued by counsel. I had some doubt at the outset, and so stated in a memorandum, whether the cause was in a position for adjudication without the appointment of a new trustee, but all the learned counsel insisted that it is so. They ought hereafter to abide by that position, if there should be any further doubt, as it was they who invoked the jurisdiction of the surrogate and quieted his scruples about proceeding as the matter stood. They all likewise now insist on the regularity of the practice employed to present the following question:

"Was the will, executed in the state of New York by Alice Franchetti, then married to a subject of the king of Italy, and with her husband domiciled in Rome, a good and sufficient execution of a certain power of appointment, conferred on the said Alice Franchetti by the will of her father, the late Adolph Hallgarten, who in his lifetime was a domiciled citizen of the state of New York, and whose will was made and proved here?"

If the question put is to be determined by the law of the state of New York, unaffected by the law of the kingdom of Italy, the promovents will prevail and extended and costly proceedings to prove the law of Italy will then be avoided as unnecessary, and consequently the progress of this cause will be expedited and ameliorated. The surrogate is always pleased to acquiesce in any request of this kind by counsel if, as here, it is thought to be in furtherance of the interests of litigants in this court.

[1] The surrogate is not, however, empowered to decide questions in abstracto. The question to be adjudicated is sub judice by reason of a motion to suppress or overrule an answer, setting up in substance that the donee of a power created by the will of her father, Mr. Hallgarten, was domiciled in Italy, the wife of an Italian subject, domiciled there, at the time she made in New York the last will and testament purporting to be an execution of the power of appointment conferred on her. They therefore invoke the principle of domicile, and insist that the law of Italy governs the execution of such power, and not the law of this state, although Mr. Hallgarten, the grantor of the power of appointment over trust property held here, was a citizen of this state and here domiciled at the time he made the will granting the power in question to his daughter, now the Baroness Alice Franchetti. Mr. Hallgarten's will was originally probated in this county. The will of Mme. Franchetti, the donee of the power in question, though made here, was proved at Rome, Italy, but thereafter ancillary proceedings thereon were had in this county, and the will duly authenticated is now recorded in this jurisdiction.

[2] Although there is no such thing as a demurrer in this court, the motion now here for determination necessarily involves the admission of all the allegations of the original petition as amended so far as they are not denied by the answer of Madame von Koppenfels as amended, and also the admission of all of the allegations contained in. such answer as amended. The regularity of the present motion is supported in principle by the decision in Ampersand Hotel Co. v. Home Insurance Co., 198 N. Y. 495, 91 N. E. 1099, 28 L. R. A. (N. S.) 218, 19 Ann. Cas. 839.

As the question to be adjudicated is novel in this state, and one of extreme importance and some nicety, it may be well to state with precision the facts which are, as just indicated, to be assumed by the surrogate in his disposition of the only question now here at the present time for determination. This question arises in the course of an accounting of the New York Life Insurance & Trust Company, executor of Edwin C. Philbrick, for the proceedings of said Philbrick as substituted trustee of the trusts created by the last will and testament of Adolph Hallgarten for the benefit of Alice Franchetti and remaindermen. Mr. Adolph Hallgarten, a citizen of the state of New York, domiciled in the city of New York, at the time of his death, died on February 13, 1885, leaving a will executed March 11, 1882, which was admitted to probate by the Surrogate's Court, New York county, May 19, 1885. In and by said will Mr. Hallgarten created a trust for the benefit of his daughter Alice, the income to go to her for life—

"and upon her death then to pay and transfer the last mentioned. share to the issue, if any, of such daughter surviving me, and if she shall leave no issue her surviving, then to pay and transfer one-half of the principal of said last mentioned share to such person or persons as such daughter shall by her last will or appointment duly executed direct, limit or appoint and to pay and transfer the remaining half of the last mentioned share, and in default of such will or appointment, then the whole of said last mentioned share to my next of kin under the laws of the state of New York, as if I had died intestate."

The said testator's daughter Alice married Baron Leopold Franchetti, a subject of the kingdom of Italy, domiciled and residing in the kingdom of Italy. In the year 1909 Alice Franchetti made a visit to this country, and while here on such visit she made her will, which was executed in the city of New York. Alice Franchetti thereafter died without issue, and the aforesaid will was adjudicated or probated at Rome, in the kingdom of Italy, and thereafter, upon such foreign proceedings, probate, or ancillary letters of administration, were issued out of the Surrogate's Court of New York county to Paul M. Warburg. The will of Alice Franchetti is as follows:

"I, Alice Franchetti (formerly Hallgarten), do make, publish and declare this my last will and testament, in manner following, hereby revoking all previous wills by me at any time made.

"First, I give, devise and bequeath to my husband, Leopold Franchetti, absolutely, all my property, both real and personal, whatsoever and wheresoever situated.

"I have requested my said husband to make certain disposition of my property after his death, but said request is in nowise obligatory upon him, nor do I intend hereby to create any trust upon said property, and it is my

intention that he shall be in the position of freely exercising his discretion and good judgment absolutely as to the disposition of the said property.

"Second. I nominate and appoint as executors of this my will my said husband Leopold Franchetti and Paul M. Warburg, of the borough of Manhattan of the city of New York, and direct that no bond shall be required of them or either of them for the faithful performance of their duties as such executors. ＊ ＊ ＊

"In witness whereof I have hereunto set my hand and seal this nineteenth day of October, in the year nineteen hundred and nine.

"[Signed.]                                        Alice Franchetti. [Seal.]"

Madame Eleanor von Koppenfels is likewise a daughter of the said Adolph Hallgarten, and is now his sole surviving next of kin. The account filed herein shows that the principal of the trust fund here involved consists wholly of personalty. The annexed petition of the accountant, in the third paragraph thereof, alleges:

"The said Alice Franchetti died without issue, and pursuant to the terms of the will of said Adolph Hallgarten the trust terminated upon her death and the entire trust fund is now distributable, one-half to Leopold Franchetti, as appointed by her last will and testament, and the other half to her sister, Eleanor Hallgarten (von Koppenfels), who is the sole surviving child of Adolph Hallgarten. That the said will of Alice Franchetti was made and executed in the city of New York on the 19th day of October, 1909, while said Alice Franchetti was temporarily within the state of New York upon a visit, and she being at the time a resident of and domiciled in the kingdom of Italy."

The answer of Eleanor von Koppenfels "denies, upon information and belief, that one-half of any part of the said trust fund is or ever has been distributable to the said Leopold Franchetti, and also denies upon information and belief that the last will and testament of Alice Franchetti makes any appointment which would entitle the said Leopold to one-half of the said trust fund or any part thereof, but alleges upon information and belief that the respondent, said Eleanor von Koppenfels, is entitled to said trust fund and each and every part thereof as the sole surviving next of kin of Adolph Hallgarten, together with all income thereon since the death of said Alice Franchetti." Said Eleanor von Koppenfels, further answering said petition, for a second and separate defense and claim, alleges upon information and belief:

"(3) That heretofore and on or about the 13th day of February, 1885, Adolph Hallgarten died, a resident of the city, of county, and state of New York, leaving a last will and testament, which was duly admitted to probate by the Surrogate's Court of the county of New York on or about the 19th day of May, 1885, of which said will a copy is hereto annexed, marked 'Exhibit A,' and hereby made a part hereof.

"(4) That the said Adolph Hallgarten left him surviving a widow, Julia Hallgarten, and three children, Walter N. Hallgarten, Alice Hallgarten and Eleanor Hallgarten, as his only heirs at law and next of kin. That the said Alice Hallgarten died on or about the 22d day of October, 1911. That the said Julia Hallgarten and Walter N. Hallgarten both died prior to the death of the said Alice Hallgarten, and that the said Eleanor Hallgarten (Eleanor von Koppenfels), this respondent, is the sole surviving next of kin of said Adolph Hallgarten, deceased. That the said Alice Hallgarten (Alice Franchetti) died without issue, leaving a last will and testament which was proved in Rome, Italy, and that ancillary letters testamentary thereon were issued out of this court to Paul M. Warburg. That a copy of said will is hereto annexed and made a part hereof and marked 'Exhibit B.'

"(5) That prior to the execution of said will hereinbefore referred to the said Alice Hallgarten married one Leopold Franchetti, an Italian citizen, domiciled in the kingdom of Italy. That for about 15 years prior to her death the said Alice Franchetti resided in the kingdom of Italy, and that at the time of her death her domicile was in the kingdom of Italy.

"(6) That under the laws of the kingdom of Italy, as the same existed at the time of the death of the said Alice Franchetti (which said laws it is hereby claimed and contended govern said will as to validity, construction, and legal effect), there was and is no statute, rule, or law to the effect that real property embraced in a power to devise passes under a will purporting to convey all the real property of the testator, or that personal property embraced in a power to bequeath passes by a will or testament purporting to pass all the personal property of the testator, unless the intent that the will or testament shall not operate as an execution of the power appears therein, either expressly or by necessary implication; but, on the contrary, under the laws of said kingdom of Italy any testamentary provision which tends to substitute the will of a third party for that of the testator is, and at said time was, void, and the essential character of a testament under said law is and was at said time that it should be a full expression of the will of the testator, and that nothing should be read into a will not specifically mentioned in it, but the intent of a testator not expressed in the will should have no force or effect.

"(7) That under the laws of the kingdom of Italy, as the same are and were at the time of the death of said Alice Franchetti, there is and was no statute, law, or rule corresponding in letter, substance, or meaning to the provisions of section 176 of the Real Property Law (Consol. Laws 1909, c. 50), or of section 18 of the Personal Property Law of the state of New York (Consol. Laws 1909, c. 41), or either of said statutes.

"(8) That under the laws of the kingdom of Italy as the same are and were at the time of the death of the said Alice Franchetti there was and is no rule or principle of law whereby a testator may give to another the power to nominate or appoint his legatees, whether by will or deed, but that 'powers,' as known to our system of jurisprudence are prohibited under the laws of the kingdom of Italy.

"(9) That the said Alice Franchetti, in and by her said last will and testament, did not intend to execute the power of appointment given to her over part of the principal of the trust fund created for the benefit of herself and remaindermen, in and by the third clause of the last will and testament of Adolph Hallgarten, deceased.

"(9a) That the said Alice Franchetti at the time of making her will, and at the time of her death, was possessed of large means in her own right, and that she possessed property in her own right in the state of New York at the time of the execution of her will and at the time of her death.

"(10) That the said will of said Alice Franchetti does not constitute or operate as an execution of the power of appointment given to the said Alice Franchetti in and by the third clause of the last will and testament of Adolph Hallgarten, deceased, over part of the principal of the trust fund created for the benefit of said Alice Franchetti and remaindermen, in and by said clause of said will."

The answer of the respondent Leopold Franchetti denies that he has any knowledge or information sufficient to form a belief as to any of the allegations contained in the third paragraph of the amended petition as to the domicile of the said Alice Franchetti, and further alleges in paragraphs 5 and 6 as follows:

"(5) That pursuant to the terms of said last will and testament of said Adolph Hallgarten the trust herein created for the benefit of Alice Franchetti terminated upon her death, and that, by virtue of the terms of said will and of the terms of the last will and testament of said Alice Franchetti, one-half of the said trust estate became distributable to this respondent.

"(6) Upon information and belief, that, while the will of the said Alice Hallgarten Franchetti was admitted to probate in the kingdom of Italy, the validity and construction thereof as an execution of the power of appointment contained in the will of the said Adolph Hallgarten are to be determined by the laws of the state of New York; but that, even if the validity and construction thereof as an execution of such power were to be determined by the laws of the kingdom of Italy, the laws of the kingdom of Italy give full force and effect to the power of appointment contained in the said will of Adolph Hallgarten, and that, under said laws, the will of the said Alice Hallgarten Franchetti constitutes a valid and lawful exercise of said power of appointment in favor of this respondent, and transfers to this respondent all the estate which under the will of said Adolph Hallgarten the said Alice Hallgarten Franchetti was empowered to transfer and appoint."

It is sufficiently apparent to the surrogate that the property to be effected by the execution of the power given to Madame Franchetti is personal property, the only evidences of title to which are now in this jurisdiction in the hands and possession of a successor trustee, domiciled here and subject to the laws of this jurisdiction. In other words, it is shown that the personal property or fund, by the will of Mr. Hallgarten given to a trustee, domiciled in this jurisdiction, has never been out of the state of New York and is now here to effectuate the trusts. Over this trust property or fund so situated the Baroness Alice Franchetti was bequeathed a power of testamentary appointment by her father, the settlor of the trust created by his last will and testament.

[3] The will of Madame Franchetti, the donee of the power, was executed in New York in conformity with our statute of wills. It makes no reference to the power, and at common law her will would not be an exercise of the power of appointment created by the will of her father. It is only by virtue of the statute of this state that the will of Madame Franchetti is to be taken to operate as an execution of the power. Whether or not the statute does apply to this case is the principal matter for the determination of the surrogate.

Such are the facts now to be taken as established. The parties would apparently like to have the surrogate decide, in the abstract, which law governs the construction of the will of Madame Franchetti—the law of her Italian domicile or the law of New York. But this question is conceived by the surrogate to be much too extended for the concrete necessities of this particular motion now here for decision. The real question here is, Does the will of Madame Franchetti, under the circumstances of this case, operate as an execution of the power of appointment conferred on her by the will of her father, without regard to the state of the law in Italy? There is no other question now here. If her will does so operate, the law of the kingdom of Italy pleaded by the obnoxious answer is immaterial and the motion now here should prevail. Ampersand Hotel Co. v. Home Ins. Co., 198 N. Y. 495, 91 N. E. 1099, 28 L. R. A. (N. S.) 218, 19 Ann. Cas. 839.

To make the real controversy in this proceeding more apparent, we may refer to the written positions of the contending parties, intended to be furthered by the motion sub judice. In the language of the parties themselves their positions are as follows:

"The respondent Leopold Franchetti, the husband of the said Alice Fran-- chetti, now makes claim to one-half of the trust fund created by the will' of Adolph Hallgarten upon the grounds that the will of Alice Franchetti, although she was domiciled in the kingdom of Italy at the time of her death, is nevertheless to be construed according to the laws of the state of New York, and, construing the same according to the laws of the state of New York, one-half of the principal of the said trust fund will pass to him under his wife's will by virtue of the operation of section 18 of the Personal Property Law of this state.

"The respondent Eleanor von Koppenfels, on the other hand, claims that the will of the said Alice Franchetti is to be construed according to the laws of the kingdom of Italy, which was her domicile at the time of her death; that under the laws of the kingdom of Italy there is no such statute as section 18 of the Personal Property Law of this state, but, on the contrary, under the Italian law the power in question could not be executed without affirmative evidence of an intent to execute it, that construing said will according to the Italian law said power was not executed, and that said respondent is therefore entitled as sole surviving next of kin of said' Adolph Hallgarten to all of the principal of said trust fund."

As the estate is large, the real point presented for adjudication is both of consequence and wholly undecided in this jurisdiction. This much for the facts, and now to the law of the matter.

Since the eighteenth century and the modification of the territorial conceptions of law both America and England have come to defer to that established principle of the law of nations known as "domicile," and ordinarily domicile regulates the succession to personal property and the received maxim, "Mobilia sequuntur personam," is applied both in this country and state and in England.

[4] In short, it may be stated as a received general principle of both international and municipal law that wills of personalty are to be construed, and effect given them by lex domicilii. Parsons v. Lyman, 20 N. Y. 103, 112; Dammert v. Osborn, 140 N. Y. 30, 40, 35 N. E. 407; In re Price, L. R., 1 Ch. Div. 1900, 442; Bloxam v. Favre, L. R., 9 P. D. 130.

It is, however, stated by at least one elementary writer on the law of domicile that testamentary executions of powers are an exception to the general principle of domicile, and that the trend of authorities is to sustain the general exception. I do not think this is wholly an accurate statement of the existing law. Nor do I find that even the American cases justify so general a proposition. But, if they did justify it, it would still be doubtful whether American decisions, on questions arising between citizens of different states of our own country, could justify the alteration of an established rule of international law. While to some extent the principle of domicile prevails between different states of the United States, the relations between the states of the United States are too intimate to make their preference for a working rule a true basis of a stated general exception to a particular rule of private international law. In the state of New York, one of the greatest commercial states of the world, we should be very cautious in the adoption of a general exception deviating from accepted rules of international dealing. In this matter the alleged divergence is between the law of Italy and the law of New York, not between the law of Massachusetts and the law of Maryland. In so far as the de-

cisions of the American cases are confined to the facts, they are, I say it with respect, just decisions. But they are not authority for a general doctrine that all powers are to be governed in their execution by the law of the donor's domicile. It is not, I think, a universally accurate proposition of law that the question, whether or not there is a due execution of a power by last will and testament, is never to be determined by lex loci domicilii of the donee of the power, but always by the law of the donor's domicile. The American cases cited, it seems to me, go much too far, if they go to that extent, I do not, however, think that they do extend so far.

[5] If a power is a purely beneficial power or assets of the donee of the power, the lex loci domicilii of the donee of the power may govern the construction of testamentary execution and distribution under the will. But this is not that case.

The alleged basis of the claimed exception of all technical powers from the principle of domicile is sometimes stated to be that technical "powers" are known only to the law of England and America, or countries subject to the common law, and therefore that "powers" are not in the contemplation of the principle of domicile. Certainly questions of this character most frequently arise on settlements for the benefit of English or American ladies domiciled abroad or married to foreigners; consequently there is some force in the contention that the principle of domicile if applied too rigorously to powers may operate harshly in particular cases. But this is only the argument ab inconvenienti which must always give way to a general rule of law. If, however, the doctrine stated as a general exception to an established principle of domicile or rule of international law is confined to certain powers attempted or sought to be executed abroad under certain circumstances, I am quite willing to subscribe to it; otherwise not. There is a great distinction, not, I think, noticed in the American cases cited to me by counsel, nor in the briefs of the learned counsel, between "powers" which are property of the donee of the power and "powers" which are the property of the donor of the power. The principle of domicile may apply to the one and not to the other.

It is obvious that technical powers of Anglo-American law are either peculiar forms of property or else fiduciary mandates unknown to the jurisprudence of countries not subject to the common law. It is probable that, when Mr. Hallgarten bequeathed "powers" of appointment to his daughter, he, at least, may be presumed to have had in mind the particular law of his own domicile, where such powers are tolerated and legalized, and not the law of some foreign domicile of choice or of some other possible domiciliium necessarium of the donee of the power. This would be a fair presumption in a case arising on a settlement by Mr. Hallgarten himself, and a like presumption, I think, would extend to the construction of any settlement made by his own last will.

[6] Now, the mandate in question to Madame Franchetti issues from Mr. Hallgarten's will, and he was a citizen of New York and his will was proved in New York. The property affected by his will forms no part of the estate of the donee. The donee is merely the

instrument through which the donor's will is effected.  As Chancellor Kent said (4 Kent's Comm. 338), to be found quoted in Matter of Harbeck, 161 N. Y. at page 218, 55 N. E. at page 852:

"An estate created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power.  The party who takes under the execution of a power takes under the authority and under the grantor of the power, whether it applies to real or personal property, in like manner as if the power and the instrument creating the power had been incorporated in one instrument."

In Sewall v. Wilmer, 132 Mass. 131, it was held:

"The property of which Mrs. Wilmer has the power of·appointment is not her property, but the property of her father; and the instrument executed by her takes effect not as a distribution of her own property, but is the appointment of property of her father under the power conferred upon her by his will."

The decisions in Matter of Dows, 167 N. Y. 227, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508, and Matter of Delano, 176 N. Y. 492, 68 N. E. 871, 64 L. R. A. 279, cited to the contrary, were decisions under the Transfer Tax Law (Consol. Laws 1909, c. 60, §§ 220–245), which expressly provided that the property affected by the power of disposition given to the donee thereof was to be treated for taxing purposes as if it was the property of the donee of the power, thereby impliedly recognizing that without such an act such property was not a property interest of the donee, such decisions are exclusively confined to matters arising under the Transfer Tax Act.  They do not justify, as counsel contend, the notion that for other purposes a person having a power of this character has a property right in the property to which it relates.

[7] It is perhaps quite unnecessary to notice at this point that technical "powers" now recognized in the reformed law of this state in connection with personal property are authorities to do an act in relation to such property or to create and revoke interests ·therein or charges thereon which the owner granting the power might himself lawfully perform.  There is no need to cite authorities to the recognized proposition that in this state "powers" themselves and the law of "powers" over personal property since the Revised Statutes tend to become uniform with technical powers and the law of powers over real estates, although the analogies between them were far from complete before the Revised Statutes.  "Powers" in this state are now due to the Revised Statutes and their several re-enactments, the common law of powers having been abrogated in this state in the year 1829. Section 130, Real Property Law.  I myself, when at the bar, prepared for the Legislature section 130 as it now reads, section 110 of the Real Property Law of 1896 (chapter xlvi) being equivocal· (see note 19 of Board of Statutory Consolidation, chapter 52, Laws of 1907). The classification of powers, adopted in this state by the Revised Statutes, takes no note of "powers of appointment."  But in practice and by a late statute they are now recognized as a species of trusts of powers.  Section 31, Real Property Law.

[8] A power to appoint to other than the grantee of the power is

now in our system a power in trust or trust of a power, and not a beneficial power. It is, in other words, a mandate rather than the property of the donee of the power. Brett, J., in Re D'Augiban (Andrews v. Andrews, 15 C. D. at page 243), very well points out the distinction between the two kinds of powers. He says:

"It seems to me that the power given in this case is what I should prefer to call a pure mandate; that is to say, it did not deal with any property or interest of the (donee), but did deal with the property and the interest in the property of the settlor (the donor of the power). * * * The moment that mandate is executed it seems to me that the mandator's intention takes legal effect not from the exercise of the mandate, but from the gift of the person who delegated the power to exercise his will."

But some part of the decision of Brett, J., is old law. As early as the year 1752, in Wilkes v. Holmes, 9 Mod. 485, Lord Chancellor Hardwicke held in substance that it was not the will of the donee of the power, but the power that passed the estate. This was a case simply of defective execution. Such has since been the recognized doctrine of powers both in this country and in England. 4 Kent, Com. 338; Matter of Harbeck, 161 N. Y. 211, 218, 55 N. E. 850. There is no need to review in detail the cases only apparently to the contrary arising under the new laws taxing powers of appointment. They are cases of statutory construction for taxing purposes only.

Let us review first for a moment what I conceive to be the state of the law of England on the effect of foreign domicile on testamentary executions of powers created in England. In 1838 in Tatnall v. Hankey, 2 Moo. P. C. 342, the English Privy Council held that an English court of probate had jurisdiction to examine into the execution of a power of testamentary appointment executed out of England, so far as to determine whether the instrument executing it was in fact and in law testamentary. There, under the will of her father, Mr. Boone, Lady Drummond, an Englishwoman, was entitled to a power to dispose of real and personal property by last will and testament, executed in the presence of two or more credible witnesses. Lady Drummond made her will in Paris, reciting the power. The will was not executed according to the law of England, but it was ultimately proved in England. At her death Lady Drummond's domicile was in Naples. Her will did not conform to the Neapolitan law. Lord Brougham laid down the general principle as follows:

"The real question is not whether this is a testamentary instrument according to the law of domicile, for we admit, as far as the execution of it goes, that it does not conform to Neapolitan law, but whether it is not a part of Mr. Boone's will (the donor of the power), carrying into effect the provisions he has made respecting the ultimate disposal of his estate. * * * "

This opinion does not deal explicitly with the effect of the law of domicile on testamentary execution of powers, and in 1859, in Crookenden v. Fuller, 8 W. R. 49, Sir Creswell Creswell intimated that domicile governs the testamentary execution of powers. But in Re Sophia Alexander, in 1860 (8 W. D. 451), he retracted this opinion and followed Tatnall v. Hankey. In 1866, in the Goods of Hallyburton, L. R., 1 P. & D., 90, a will made in Scotland in the English form by a

married woman domiciled in Scotland, although not valid by the law of the Scotch domicile, was admitted to probate in England as a testamentary execution of a power of appointment over English settled property on the authority of the decision (In re Sophia Alexander, 8 W. D. 451), but the court questioned the authority of the latter decision and thought the decision in Crookenden v. Fuller was to be preferred. In 1896 the Probate Division of the High Court of Justice, in the Goods of Huber, L. R. P. D., 1896, 209, where a testatrix, who at the time of her death had a French domicile, had executed in pursuance of a power of appointment a will in the English form over English settled property, held that they would follow Sir Creswell Creswell's judgment in Re Sophia Alexander, but under protest. Poncy v. Hordern, L. R., 1 Ch. D., 1900, p. 492, although much discussed as to its purport, may be cited to the same general effect. In 1909 the English House of Lords, in Murphy v. Deichler, A. C., 446, put an end to controversy, and held distinctly that a power of appointment by will over Irish property was well exercised by a will executed in Irish and English form, although the donee of the power was domiciled in Germany and the will was not validly executed according to the law of the appointer's own domicile, and they held also that such will was entitled to be probated in Ireland or England for the purpose of the appointment, although for no other purposes. They said incidentally that had the contention to the contrary been made 70 years before it might have prevailed. This is a very plain decision, and puts an end to the prior controversy on this point in England.

From this review of the English cases the surrogate is satisfied that in England a power of appointment over settled English property, real or personal, executed in conformity with English law, is well executed and entitled to probate for the purpose of an appointment, even if such will does not conform modo et forma to the law of the domicile of the appointer. But I think in all the English cases noticed the foreign will under examination expressly referred to the power of appointment. Thus it is that they are not expressly in point here. They turned on the question whether or not the instruments of execution were testamentary. The English cases more in point here will be reserved for consideration at the more appropriate place in this opinion.

Having reviewed the state of the English authorities to the extent noticed, let us next consider the American decisions dealing with the same point. In Sewall v. Wilmer, 132 Mass. 131, the facts, briefly stated, were as follows: A testator domiciled in the commonwealth of Massachusetts devised real and personal estate situated there to trustees in trust to the use of his daughter until her arrival at the age of 21 years, or marriage within that age, and then in trust to convey one half to her discharged of all trusts, and to hold the other half during her life, paying her the income thereof and on her death in trust to convey the same as she should by deed or writing or by her last will, or by any writing purporting to be her last will, appoint, and, in default of such appointment, to the use of her children and their heirs. The daughter married a resident of Maryland and died there pos-

sessed of property real and personal other than that over which she had the power of appointment, and leaving the husband and two children, and a will, which was duly admitted to probate in Maryland and in Massachusetts, by which she devised to her husband all the real and personal estate to which she should be entitled in law or equity at the time of her decease, but made no mention of the power of appointment. By the law of her domicile her will was not a good execution of the power of appointment. The court held:

"That the property of which the daughter had the power of appointment was not her property, but the property of her father, and that the instrument executed by her took effect, not as a disposition of her own property, but as an appointment of property of her father under the power conferred upon her by his will. The domicile of the testator whose property is in question is therefore the domicile of the father. The property is held by trustees residing and appointed in Massachusetts, and must be distributed here, and the trustees cannot be held to account for it in Maryland or in any other state even if they should be personally found there."

And the court held that the instrument executed by the daughter being sufficient under the law of Massachusetts was therefore a good execution of the power.

In Bingham's Appeal, 64 Pa. 345, the facts were as follows: William Bingham was domiciled in Pennsylvania, and his will was proved there June 16, 1856. In said will he created a trust income to his son Alexander Baring Bingham, giving to his son in case he should never marry the power of bequeathing his share by any last will and testament signed in the presence of two witnesses to such person or persons as he should think proper. Alexander Baring Bingham never married and died in England in 1865, that being the place of his domicile, leaving a will containing a general residuary devise and bequest, but in no way alluding to the power or to the property the subject of the power. The court held that:

"Where the situs both of the will containing the power and of the property subject to it lies beyond the domain of Parliament, it is evident that a statutory construction of the instrument of execution can have no operation upon it. That would be to subject Pennsylvania rights to English domain. Whether a power contained in a Pennsylvania will over Pennsylvania property has been duly executed is evidently a question of Pennsylvania law and not that of a foreign country having no jurisdiction. * * * The rule that the same interpretation of a will should be given in a foreign country which the will has in the place of domicile is misapplied to this case. That is precisely the rule we are now applying. The will, the property, and the domicile of William Bingham being within Pennsylvania, the law of this state must govern the interpretation both of the power and the execution of it."

In Cotting v. De Sartiges, 17 R. I. 668, 24 Atl. 530, 16 L. R. A. 367, Mary M. Bourne, domiciled in Rhode Island, gave by will one-sixth of her residuary estate in trust for the benefit of her grandson, Charles Allen Thorndyke Rice, during his life, and upon his decease to transfer and pay over the same to his issue if he should leave any, and he should appoint "by will or instrument in the nature thereof executed in the presence of three or more witnesses; and if he leaves no issue, to and among such persons and upon such uses and trusts

as he shall so appoint," and, in default of such appointment and issue, to and among those who should then be her heirs at law. The will was dated in 1879, and was proved in 1882. Rice died in 1889, leaving a will executed in England in 1881. His will contained a general residuary clause, but no specific execution of the power of appointment and no mention of the fund to which the power was given. By statute in England and New York Rice's will was an execution of the power; no such power existing in Rhode Island. The court held that the question whether Rice's will executed the power given by Mary M. Bourne was to be decided by the law of Rhode Island.

In Lane v. Lane, 4 Pennewill (Del.) 368, 55 Atl. 184, 64 L. R. A. 849, 103 Am. St. Rep. 122, the court held that questions as to the execution of a power of appointment of personal property are to be decided by the law of the domicile of the donor of the power, and not by the law of the domicile of the donee. The material facts of this case are as follows: James Lane, the elder, by his will bearing date April 15, 1880, bequeathed unto Edward Bringhurst, Jr., the sum of $50,000 in special trust, the income of the same to be paid over unto son of the testator, Augustin S. Lane, during his natural life, and "upon his decease then in trust to dispose of said principal sum of $50,000.00 in such manner as my said son Augustin by his last will and testament or by any writing executed as such shall direct and appoint." The said testator, James Lane, was at the time of making said will and at the time of his death domiciled in and a citizen of the state of Delaware, and his will was proved in that state. He died in 1881. The said Augustin S. Lane made his last will and testament bearing date October 8, 1887. He was at the time of making his said will and at the time of his death domiciled in and a citizen of the state of Pennsylvania, and his will was proved in that state. The court held that:

"The donor of the power, James Lane, being a citizen and resident of this state and his will a Delaware will and the trustee a citizen and resident of this state, the question as to the execution of the power is to be determined by the law of this state and not by the law of Pennsylvania, the domicile of Augustin S. Lane. The questions of the execution of the power of personal property are to be decided by the will of the donor of the power, and not by the will of the donee of the power. This was conceded in the argument of the counsel of the defense and is absolutely so by authority in this country and in England."

In Prince de Bearn v. Winans, 111 Md. 434, 74 Atl. 626, it was held:

"When a deed of trust provides that a cestui que trust, having a life interest in the property conveyed, shall have the right to dispose of the fund by last will, then the person appointed to take by the last will takes the property from the grantor in the deed in the same manner as if the will executing the paper had been incorporated in the deed.

"A deed of trust giving to the beneficiary a power of appointment by will should be construed according to the law of the domicile of the grantor in the deed; and the effect and construction of the will executing the power are likewise governed by that law, and not by the law of the domicile of the testator."

[9] Having now reviewed both the English and American decisions bearing on the point before us, it will be perceived that in respect of powers of testamentary appointment over settled property in England or America the law of the domicile of the donor of the power, and not that of the donee of the power, determines in most cases whether or not there was a sufficient testamentary execution of the power of appointment given to the donee of the power. Further than this the decisions cited do not, I think, proceed. They do not refer to the execution of powers other than powers of appointment, or, in other words, they do not refer to other than mandates which the donor of the power might himself lawfully perform.

Had the power given by Mr. Hallgarten to his daughter, Madame Franchetti, been that species of power which in our law is now denominated a "beneficial power," the rule here might be quite otherwise; or had it not been for the decisions of our courts in Cutting v. Cutting, 86 N. Y. 522, and Farmers' Loan & Trust Co. v. Kip, 192 N. Y. 266, 85 N. E. 59, the mere execution of a general power of appointment by Madame Franchetti might have made as at common law the property appointed immediately assets of Madame Franchetti herself for all purposes, including distribution. In that condition of the law of New York, assuming the same to be the Italian law, a totally different question from that now here would have been presented for my consideration, and none of the cases thus far referred to in this opinion would then have been in point. In re Pryce; Lawford v. Pryce, 105 Law Times Reports, 51.

After this very general survey of the adjudications we may approach nearer to the facts and the law of this particular case:

[10] Madame Franchetti, the daughter of Mr. Hallgarten of New York, although undoubtedly domiciled in Italy, by reason of her marriage to an Italian subject there domiciled (In the Goods of Huber, L. R. P. & D. 1896, p. 210; Jones v. Jones, 8 Misc. Rep. 660, 30 N. Y. Supp. 177), duly executed in the state of New York her last will and testament. This is a very significant fact in this particular case.

[11, 12] It is a consequential fact that her will is in the English language, not in Italian, and more than that it is in the technical language of the law of this state, and it is, I think, to be taken as executed with especial reference to our existing Law of Wills, which would include section 18, Personal Property Law. While under the Massachusetts decision already noticed, had Madame Franchetti's will been made in Italy and in Italian, it would have been a good execution of the power in question if it had been a general disposition of her estate, yet to my mind this instance before me is a much stronger case than any of those I have yet had in contemplation. When the will of a domiciled Italian lady, having a power of appointment, is executed·by her here, and it may have reference to property here in the hands of a trustee, even although it is personalty, it is a proximate inference that she had the law·of New York in mind, and that such will was· executed with reference to our law, at least in so far as such will is concerned with the property in the hands of a domiciled trustee, affected by the power·of appointment. This being so and the law of

New York then dispensing with the necessity of a special reference to the power conferred on her (section 18, Pers. Prop. Law), her will, I think, is to be taken to operate as an execution of the power in question. The principle of domicile is always applied on the presumption that the domiciliary contemplated the law of domicile only. It is sufficiently apparent that the instrument executing the power was of a testamentary nature even by Italian law, for by ancillary process the will, duly authenticated, is sent here, and is now practically adjudicated to be a testamentary instrument in this jurisdiction. Thus we have the factum of will in this matter adjudicated both by Italian law and the law of New York. The law of Madame Franchetti's domicile in this particular is only important for seeing whether the document executed by her is good as a will. In re D'Este's Settlements, 1 Ch. 1903, at page 900.

There was to my mind a very significant doubt suggested by Lord Brougham in his judgment in Barnes v. Vincent, 5 Moo. P. C., 216, whether if a power of appointment over English settled property was to be executed by will, English ancillary probate was originally necessary if the foreign instrument purporting to execute the power was in fact of a testamentary character. Lord Brougham cites Mr. Powell's note to Swinburne, 155, in support of this proposition. But the English courts had then irrevocably held that the factum of will must be established by ancillary process in the English ecclesiastical courts before a foreign will operated to execute a power over property settled by an Englishman on English trusts. Tatnall v. Hankey, 2 Moo. P. C., 342; Barnes v. Vincent, 5 Moo. P. C., 216; D'Huart v. Harkness, 34 Beav. 324, 327; In re Price, L. R., 1 Ch. Div., 1900, 442. Had it not been for such decisions, the law might have taken a different course. This point is now alluded to only in order to show how far away the principle of domicile really is when the foreign donee of a power of appointment is possibly in the way of executing a power given to such foreigner by one domiciled here. Had the early English cases at first rejected the necessity of establishing factum of will in the ecclesiastical courts in the instance of a foreign testamentary execution of a power of appointment, the principle of domicile would have had no application to such a case as this. Equity would have then passed on the question of due execution of the power of appointment, without reference to the domicile of the donee of the power or the particular law of wills established in his domicile. By relation the act of execution would then be assumed to be in the country of the donor of the power. Any paper of a testamentary character would have sufficed in equity for an execution of the power. Thus by a little different process of reasoning we should have arrived at almost the same result as the present adjudications. But the English and American law did not take that course. They required the testamentary character of the instrument in execution of the power to be first formally adjudged in a court of probate.

The elaborately considered case of Sewall v. Wilmer, 132 Mass. 131, is a domestic precedent for the conclusion that I should apply to this will before me section 18 of the Personal Property Law of this state to the effect that "personal property embraced in a power to bequeath

passes by a will or testament purporting to pass all the personal property of the testator" unless an intent otherwise "appear therein either expressly or by necessary implication." The Massachusetts case goes much farther than modern foreign cases on the same point, and the surrogate is dealing with a question of private international law, not with the law of Massachusetts. Unless, however, I do apply section 18, Pers. Prop. Law, the will of Madame Franchetti cannot be regarded as an execution of the power of appointment vested in her by the will of her father.

The present law of England, it will be observed, contains a similar provision to section 18, Personal Property Law (section 27, Wills Act). The English provision is not, however, so extensively applied to foreign wills of donee of powers as the case of Sewall v. Wilmer, 132 Mass. 131, would justify me in this instance. Indeed, the modern English decisions are the other way. In re D'Estes' Settlements, L. R., 1 Ch. Div., 898, 1903; In re Scholefield (Scholefield v. St. John, L. R., 2 Ch. Div., 1905, 408). But in all the late English adjudications there is noticeable this admitted exception to the principle of domicile: If the foreign will on its face bears any indication that the will was executed with reference to the law of some other country than that of the domicile of the maker of the will, the principle of domicile is not applicable. In re Price, L. R., 1 Ch. Div., 1900, 442; In re Scholefield, L. R., 2 Ch. Div., 1905, 408, 416. But, irrespective of any modern English decision on that point it is apparent to the surrogate that the facts disclosed in this matter about the creation of the power of appointment by Mr. Hallgarten, the donor of the power, who was then domiciled here, and the other facts apparent that the will of the donee of the power, Madame Franchetti, was executed in this state, in the English language and with apparent special reference to the law of this state, make it conclusive in this matter that the will of Madame Franchetti (but in so far only as it purports to be an execution of the power of appointment over the settled property) was intended by her to be construed by the law of this state, including section 18 of the Personal Property Law of this state.

My conclusion is in accord with both domestic and foreign precedents, discordant as they are, because it is to be taken here that Madame Franchetti herself intended her will to have effect according to the law of New York. This being so, and section 18 of the Personal Property Law being then part of that law by express enactment, as it would have been, indeed, without such re-enactment (Hutton v. Benkard, 92 N. Y. 295), the will of Madame Franchetti must have the benefit of section 18 of the Personal Property Law and construed accordingly.

[13] It is strenuously urged by counsel for Madame von Koppenfels that section 47, Decedent Estate Law (Consol. Laws 1909, c. 13), makes it imperative on me to construe the will of Madame Franchetti by the law of her Italian domicile. I cannot accede to this. That section was only a re-enactment of prior statutes to the same end, and is to be given the same construction. I myself had the honor while at the bar to prepare the first draft of the present "Personal Property Law" for re-enactment by the Legislature, and to some ex-

tent, therefore, I am necessarily somewhat familiar with the want of power in the late board of statutory consolidation to report any substantial change in the pre-existing law. The statute from which section 47 was mediately taken was only a declaratory statute and in no wise affected the prior law. Mr. Throop's Note to section 2694, Code Civ. Proc. The law of this state now stands as if neither section 2694, C. C. P., nor section 47, Pers. Prop. Law, had ever been enacted. We cannot make rules of private international law in this state by acts of our own Legislature. Such an absurd attempt must not be imputed to a statute of this state.

In view of all the foregoing considerations, the surrogate now holds that the law of New York, including section 18 of the Personal Property Law, and not the law of Italy, governs the construction of the will of Madame (the Baroness) Alice Franchetti in so far as the will is concerned with the settled property of her father, the late Mr. Hallgarten, and that therefore the Italian law in respect of the execution of testamentary powers is quite inconsequential in this particular. But farther than this the surrogate does not hold. He does not wish to be taken as holding that as to Madame Franchetti's private property (or that outside of the trust settlement created by the will of her late father) the law of her domicile is not prevalent in a proper case.

Motion granted.