## In the Matter of the Estate of William M. Harriman, Deceased.

Surrogate's Court, New York County, December 16, 1924.

**Wills — power of appointment — accounting by trustee under will of New York donor creating power — donee of power died resident of California — donee's will appointing life estate to children and remainder to grandchildren was denied probate in California on ground that it was procured by undue influence — courts of New York may determine validity and effect of will purporting to exercise power of appointment created by will of New York donor — our courts may determine whether will was properly denied probate — proof of undue' influence insufficient to prevent probate in New York — will of donee cannot be proven in accounting proceeding — necessary under Real Property Law, § 167, that donee's will be probated in this State.**

The courts of New York alone must determine the validity and effect of a will which purports to exercise a power of appointment under a will of a New York donor. That principle applies not only to the construction of the will of the donee but also extends to the jurisdiction to admit or reject it as a will under the criteria of our probate law.

Accordingly, the courts of this State may determine whether or not a will by a donee who died resident of California, purporting to exercise a power of appointment contained in a will of a New York donor, by appointing the property given in trust to the donee to her children in trust with remainder to her grandchildren, was properly denied probate by the courts of California on the ground that it was procured by undue influence, and may determine whether or not the evidence of the alleged undue influence would have been sufficient if presented in the courts of this State to warrant our courts denying the probate of the will. Especially is this true where rights of infants in the trust fund are involved.

The evidence presented in the proceedings for the probate of the will of the donee in California was insufficient to establish that the donee's will was procured by undue influence.

However, the will of the donee cannot be proven in this proceeding for an accounting by the trustee under the will of the donor, even for the purpose of establishing the execution of the power of appointment, for section 167 of the Real Property Law provides that where a power to dispose of real property is confined to a disposition by devise or will the instrument must be a written will executed as required by law, and, therefore, the instrument purporting

MATTER OF HARRIMAN. **321**

Misc. 320]    Surrogate's Court, New York County, December, 1924.

to exercise the power must first be admitted to probate here before it becomes effective.

Said section 167 is likewise applicable under section 11 of the Personal Property Law to the trust of personal property involved in this proceeding.

It will, therefore, be necessary that the will of the donee be admitted to probate in the courts of this State and the special guardian of the infants is directed to forthwith file a petition, offering the scripts for probate as the last will and testament of the donee for the purpose only of establishing the validity under the laws of New York of the exercise of the power, and until probate the distribution of the trust fund in this State will be suspended.

PROCEEDING for an accounting by a testamentary trustee involving the exercise of a power of appointment.

*Walter M. Campbell* and *D. W. Steele, Jr.*, for Cornelia N. Van Rensselaer, Jeremiah Van Rensselaer, Sr., Orlando H. Van Rensselaer, Mary Frances Briscoe, Anna H. Masten and Matrina Ginn.

*Stetson, Jennings & Russell*, for the Guaranty Trust Company.

*Wesselman & Kraus*, for the executors and trustees.

*Jeremiah F. Connor*, special guardian for the infant Katrina Van Rensselaer.

FOLEY, S.:

This is an accounting of Joseph W. Harriman as trustee under the last will and testament of William M. Harriman. The question directly involved is whether the latter's sister, Anna Ingland Van Rensselaer, exercised a power of appointment over certain property given to her by the testator's will. The present case is a novel one for I have been unable to find any decision in our State reports which passed upon the exact issues, which are: Have the courts of New York exclusive jurisdiction to determine whether a non-resident's appointment of a power granted by a New York resident *is or is not a will?* Can the will of the donee be admitted to probate here notwithstanding it has been rejected by the courts of the donee's domicile? The special guardian of certain infant remainder-men filed objections to the account and contends that the power was validly exercised, and that the courts of New York State (the State of the domicile of the donor of the power) have exclusive jurisdiction to determine the validity and effect of the instrument of appointment. On the other hand, the children of Anna I. Van Rensselaer contend that her wills were ineffectual to execute the power; that they were denied probate by the courts of the State of California where the donee, Mrs. Van Rensselaer, resided; that the decrees denying probate to her various wills are conclusive upon the courts of New York State, and that in default of the exercise of the power, the trust fund must be distributed as directed by the

Surrogate's Court, New York County, December, 1924. [Vol. 124

will of the donor, William M. Harriman, to the children and to the issue of a deceased child *per stirpes*, as if Mrs. Van Rensselaer, the donee, had died intestate. The issues raised by the objections were referred to a referee, and the present application is for the confirmation of his report. The voluminous briefs of the various counsel and special guardian have been prepared with care and thoroughness.

The will of William M. Harriman was admitted to probate by the Surrogate's Court of New York county on April 27, 1903. It created by the 5th paragraph a trust fund, now amounting to $68,474.19, all personal property, for the benefit of his sister, Anna Ingland Van Rensselaer, with direction to pay her the income for life. Upon her death a small annual income was directed to be continued to be paid to a niece of the testator, Cornelia Van Rensselaer. As to the remaining corpus of the trust the will provided, upon Mrs. Van Rensselaer's death, that " the remainder of the capital and the principal of said trust fund shall be paid over and delivered in accordance with the appointment or provisions of the last will and testament of my said sister, or if she die intestate, to her children or descendants, in equal shares, *per stirpes* and not *per capita.*"

Mrs. Van Rensselaer, the life tenant of the trust, died December 14, 1920, a resident of Los Angeles, Cal. Her six children and Katrina Van Rensselaer, a grandchild (the only surviving child of James F. Van Rensselaer, a deceased son), claim to be entitled to the remainder of the trust by reason of the failure to appoint under the power. The special guardian represents certain infant grandchildren of Mrs. Van Rensselaer, who are the remaindermen in her will. Mrs. Van Rensselaer appears to have executed a will last in point of time on August 7, 1919, a prior will executed on May 29, 1911, and a codicil thereto dated July 19, 1913. Each will is in excellent legal form and recites her specific intent to exercise the power given by her brother's will. The will of 1919 was offered for probate in the Superior Court of California. Objections were filed, under the procedure of that State, attacking the validity of the will, its due execution, and raising the principal objection that the will was procured by undue influence. This influence was alleged to have been exercised by one John D. Clarke, whom Mrs. Van Rensselaer described as her adopted son. The infant remaindermen under Mrs. Van Rensselaer's will were not mentioned in the petition for probate, were never served in the proceeding and their interests were not protected by a special guardian or guardian *ad litem*. Out of a considerable estate disposed of in this will Clarke was given the relatively small legacy

of $10,000.    By a decree of the Superior Court, entered June 24, 1921, the will was denied probate on the ground of undue influence. Subsequently the 1911 will, with the 1913 codicil, was presented for probate, and on May 23, 1922, the California court made a decree denying probate to that will and codicil upon the ground of undue influence.    After an attack was made in New York State upon the irregularity of the probate proceedings, a further proceeding was brought in California to correct the defects in the proceedings there.    The chronology is rather important for the order of reference in the proceeding before me was made on April 3, 1923, and immediately thereafter, on April 16, 1923, the alleged curative proceeding was begun in California.    A further decree was made by the California court on June 4, 1923, which sustained the regularity of the proceedings and contained as part of the judgment a statement that there was no fraud or collusion in any particular practiced in them.    The infants were made parties to the last proceeding and their interests were protected by a guardian *ad litem*.    The special guardian contends that there was a deliberate design on the part of the children of Mrs. Van Rensselaer to defeat the probate of her wills, to deprive the infant grandchildren of their remainder interests in the appointed property so as to enable the children to take under the will of the testator, William M. Harriman, here.    He likewise contends that the interests of the grandchildren were suppressed from the court. in the petition and during the trial.    He also contends that the proofs in California establish the due execution of the various wills under the supervision of a reputable attorney of long standing and the testatrix's lifelong legal adviser.    Because of the conclusion I have arrived at, it is unnecessary to comment on the proceedings that were had in California.    It is sufficient to say that many of the special guardian's charges are sustained by an examination of the record in those proceedings.    It is interesting to note also that Clarke, the person who was alleged to have exercised the undue influence, received but $10,000 under the will of 1919, the same amount under the codicil of 1913, and was not even mentioned in the will of 1911.    Moreover, it is claimed that the will of 1919 made a just and equitable distribution of Mrs. Van Rensselaer's property to her children and grandchildren, although the children were given life estates only, with remainders to their children. There was one other trust created for the benefit of the daughter of the deceased son.    It is asserted that the motive which actuated the course of conduct of the children was their desire to escape being placed upon a lean income for life and that the interests of the grandchildren had no concern with them so long as they could

destroy the trusts and obtain their shares outright. The courts of our State have vigorously protected trust estates and have resisted any attempt, either by collusion or other acts, to defeat the will of a testator, or to allow improvident beneficiaries to obtain their estates outright. Particularly has this rule been enforced where the rights of infant remaindermen were created under the terms of the will. (*Matter of Wentworth*, 230 N. Y. 176; *Metcalfe* v. *Union Trust Company*, 181 id. 39.) It appears also from an examination of the record that the evidence of undue influence was flimsy, consisted in great part of hearsay and most of the proof was given by interested persons whose testimony would have been excluded in New York under the provisions of section 347 of the Civil Practice Act (former Code Civ. Pro. § 829.) Moreover, the evidence as to undue influence was wholly insufficient to meet the quality or quantity of proof required under the decisions of our appellate courts. (*Matter of Reuf*, 180 App. Div. 203; affd., 223 N. Y. 562; *Matter of Kindberg*, 207 id. 220; *Matter of Price*, 204 App. Div. 252; affd., 236 N. Y. 656.) It is unnecessary to further review the facts in evidence except to say that they present a picture of disregard of the rights of the infant grandchildren and a successful culmination of the efforts of the children to destroy the trusts and to nullify any testamentary act of their mother. One fact should be added, however, to complete the picture; the children, after the denial of probate of all the wills, settled with the person charged with having used undue influence upon their mother, after his rights had been terminated, by paying him $5,000 in settlement of his defunct legacy of $10,000.

I hold that under the circumstances of this estate the decrees of California are without legal effect on the courts of this State. The contention of the counsel for the children of Mrs. Van Rensselaer that these decrees are entitled to full faith and credit in this State, under the Federal Constitution, must be overruled. The identical question involved here was settled by the United States Supreme Court in *Blount* v. *Walker* (134 U. S. 607). That decision was not cited in any of the briefs submitted to me. In that case the grantor of the power resided in South Carolina. The grantee of the power resided in North Carolina and her will was probated there. It was claimed that the decree admitting the will to probate in North Carolina was conclusive upon the courts of South Carolina. The South Carolina court held that the question of the sufficiency of the instrument, by which it was attempted to execute the power, was within its exclusive jurisdiction; that the purported will of the donee was not her last will and that it was invalid as an execution of the power in the donor's estate because it was no

MATTER OF HARRIMAN. **325**

Misc. 320]    Surrogate's Court, New York County, December, 1924.

executed in accordance with the laws of South Carolina.   On appeal from this decision, the United States Supreme Court held that no Federal question was involved; that the courts of South Carolina had exclusive jurisdiction of its resident's estate; that the provisions of section 1, article IV of the Federal Constitution, that full faith and credit should be given in each State to the public acts, records and judicial proceedings of every other State, were not violated.

William M. Harriman was a resident of New York State.   His will was admitted to probate in this State, and the distribution of his estate is subject to the  decree of the Surrogate's Court of New York county.   It is the established law of this State that the courts of New York alone must determine the validity and effect of an instrument, whether will or deed, which purports to exercise a power of appointment under the will of a New York donor.   That principle applies, in my opinion, not only to the construction of the will of the donee, but also extends to the jurisdiction to admit or reject it as a will under the criteria of  our  probate law.   This rule was recognized in *Matter of New York Life Insurance & Trust Company (Estate of Hallgarten)* (139 N. Y. Supp. 695), where my distinguished  predecessor,  Surrogate  FOWLER,  comprehensively reviewed the English and American law as to the execution of powers.   There the donee was a resident of Italy, and the donor was domiciled in New York.   His decision was affirmed without opinion by the Appellate  Division, First Department (157 App. Div. 916), and by the Court of Appeals in a *per curiam* decision (209 N. Y. 585), wherein the court stated: " The learned and exhaustive opinion of Surrogate FOWLER makes it unnecessary for us to discuss at length the important and interesting question involved in this case.  We regard his reasoning as sound, but prefer to put our decision squarely on the ground that the construction and effect of the will of Madame Franchetti, in so far as it involved an exercise of the power of appointment conferred by the will of her father, is governed by the law of this State, the domicile of the donor of the power, and the situs of the property. The learned surrogate was able to find as a fact that she intended her will in that respect to be construed according to the law of this State and so did not consider it necessary to determine whether as matter of law such an intent would be presumed.  We adopt the rule applied in Massachusetts and concur in the reasoning of  Chief Justice GRAY in support of it in *Sewall* v. *Wilmer* (132 Mass. 131)."

That decision was also followed by the Appellate Division, First Department, in *Matter of Canda* (197 App. Div. 597), where Mr. Justice MERRELL likewise reviewed the pertinent precedents.

His opinion in effect held that the law of the domicile of the donor alone controlled. He cited the general rule respecting the passing of an estate under a power of appointment as stated by Chancellor Kent in 4 Kent's Commentaries, 338, which was cited with approval in *Matter of Harbeck* (161 N. Y. 211, 218). He pointed out that in England such has been the rule since 1839, when the case of *Tatnall* v. *Hankey* (2 Moore P. C. 342) was decided by the British Privy Council.

The latter decision was followed in the leading case of *Murphy* v. *Deichler*, in the House of Lords (L. R. [1909] App. Cas. 446), very similar in its facts to the question involved here. There the power of appointment created by the will of an English resident was exercised by a will executed in English form, although the appointor was domiciled abroad in Germany and the will was not validly executed according to the law of her domicile. It was held that the document might be admitted to probate as a will for the purpose of the appointment although not admissible for any other purpose. (See, also, 1 Jarm. Wills [Sweet 6th Eng. ed.], 800, and the cases cited.) In *Sewall* v. *Wilmer* (132 Mass. 131), cited by the Court of Appeals in *Matter of New York Life Insurance & Trust Co. (Estate of Hallgarten)* (*supra*), the donor was a resident of Massachusetts. The will of the donee was admitted to probate in Massachusetts, although she was a resident of Maryland. It was held that the validity and effect of the donee's will was governed by the law of Massachusetts and not that of Maryland. *Sewall* v. *Wilmer* (*supra*) was followed in *Walker* v. *Treasurer & Receiver-General, etc.* (221 Mass. 600; 109 N. E. 647), where the court pointed out that the property was not that of the donee, but of the donor who established the trust and created the power, and that the *situs* of the property did not attach to the domicile of the donee of the power. The court also held that the power of appointment by will might be exercised by an instrument valid in the jurisdiction where the power was created, although not valid as a will in the domicile of the donee.

The rule has likewise been followed in Pennsylvania in *Bingham's Appeal* (64 Penn. St. 345). Such is the law also in Rhode Island (*Rhode Island Trust Co.* v. *Dunnell*, 34 R. I. 394), and in Maryland (*Prince de Bearn* v. *Winans*, 111 Md. 434). In a very recent decision in our own State, dealing with this general subject, Mr. Justice DOWLING in his opinion sustained the jurisdiction of our Supreme Court in an accounting action for the distribution of the estate of Jay Gould who died a resident of New York (*Gould* v. *Gould*, 211 App. Div. 78).

To summarize the rules of law to be applied; where no question

Misc. 320]    Surrogate's Court, New York County, December, 1924.

is raised by any party as to the legality of the rejection or admission of the donee's will to probate, our courts, as a matter of comity or discretion, may accept the decree of the foreign State, if the requirements of our State are established. But where, as in this case, the rights of infants are prejudiced, or where substantial objections are raised to the regularity of the procedure in the foreign State, our courts must enforce their exclusive jurisdiction over the donor's estate and inquire into the validity of the donee's will in an original proceeding here. Only by such safeguards may the beneficiaries be protected against a collusive or fraudulent proceeding in a foreign State by which the intentions of a New York testator, or of his appointor, may be wholly frustrated.

The report of the referee is, therefore, erroneous in holding that the decrees rejecting the wills in California were conclusive; in declaring that Anna Ingland Van Rensselaer died intestate, and in directing a distribution in accordance with the will of William M. Harriman as though Mrs. Van Rensselaer died intestate without exercising her power of appointment. The various authorities cited by the learned referee in his opinion relate to the conclusiveness of foreign decrees dealing with the individual property of a decedent and are not applicable to a power of appointment given by a New York resident. I have already pointed out that the United States Supreme Court has held that such decrees are entitled to no recognition in the State where the original estate is administered. (*Blount* v. *Walker*, 134 U. S. 607.)

At the instance of the special guardian the depositions of the draftsman and witnesses to the various wills and codicil of Mrs. Van Rensselaer were taken by commission. Their testimony amply satisfied the requirements of law as to the execution of all the testamentary scripts, and particularly the last will of 1919. While all the necessary parties interested have been cited in this proceeding, I am of the opinion that the will of the donee cannot be proven in this accounting proceeding even for the purpose of establishing the execution of the power of appointment. Section 167 of the Real Property Law provides: " Where a power to dispose of real property is confined to a disposition by devise or will, the instrument must be a written will, executed as required by law." In other words, the instrument purporting to exercise the power must first be admitted to probate here before it becomes effective. The sufficiency of the instrument as a will must be tested by our law of wills. The purpose and reasons for the enactment of this section of the law are clearly set forth in the notes of the original revisers of the Revised Statutes under the heading, Execution of Powers (Fowler's Real Prop. Law [3d ed.], 1302). In their discus-

sion the revisers pointed to the evils that had grown out of the too strict construction by the common-law courts, of instruments attempting to exercise the power, and on the other hand the over-liberal procedure of equity in giving validity to such instruments where the power was defectively exercised. From that time on the law of this State has been that the instrument must be executed by the donee of the power with the same formalities as if the appointed property was actually owned by him.

Section 167 of the Real Property Law is likewise applicable to the trust of personal property involved here. (Pers. Prop. Law, § 11; *Matter of Moehring*, 154 N. Y. 423; *Cutting* v. *Cutting*, 86 id. 522.)

I, therefore, hold that there must be an independent probate proceeding under the solemn form required by our practice.

The special guardian of the infants is directed to forthwith file a petition offering the scripts for probate as the last will and testament of Mrs. Van Rensselaer, the donee of the power, for the purpose only of establishing the validity, under the laws of New York, of the exercise of the power. The distribution of the trust fund here will be suspended until the final determination of the probate proceedings.

The referee's conclusions are overruled and the report denied confirmation. Submit decree accordingly.