In the Matter of the Estate of HENRY H. ROGERS, Deceased.

Surrogate's Court, New York County, May 23, 1938.

*Spence, Hopkins, Walser & Hotchkiss* [*Kenneth M. Spence* and *Paul Van Anda* of counsel], for Pauline V. Hoving, former widow of decedent, petitioner.

*Timothy J. Healy* [*Thomas F. Hennessy* of counsel], for Henry H. Rogers, respondent.

*Larkin, Rathbone & Perry* [*Harold A. Donegan* and *Arthur W. Siegrist* of counsel], for Adrian H. Larkin, Albert Stickney and Central Hanover Bank & Trust Company, as executors, etc., of Colonel Henry H. Rogers.

*Davis, Polk, Wardwell, Gardiner & Reed* [*Walter D. Fletcher, J. Hutton Hinch* and *John M. Polk* of counsel], for the City Bank Farmers Trust Company, Adrian H. Larkin and William R. Coe, as trustees of the trust created for the benefit of Henry H. Rogers, Jr., under article 8 of the last will and testament of Henry H. Rogers, deceased.

*Stephen P. Nash,* special guardian of A. H. P. Ramos and P. J. P. Ramos, infants, respondents.

Foley, S. Henry H. Rogers, the testator here, died a resident of this county on May 19, 1909. His will was admitted to probate by decree of this court. Under its terms, he created, by the residuary clause, separate trusts for the benefit of each of his children, with income payable to them during their respective lives. There was a direction to pay over one-half of the principal set apart for each child as he or she attained the age of forty years. Upon the death of the particular child he directed his trustees to " convey, transfer and pay over the principal thereof to such persons or corporations and in such manner as the said child shall direct by his Last Will and Testament, or, in the absence of such direction to such persons as shall then constitute the heirs at law of the said child, as in the case of the inheritance of real property according to the laws of the State of New York."

Henry H. Rogers, the son of the testator, died on July 25, 1935, a resident of Suffolk county in this State. He is described in the succeeding parts of this decision as Colonel Rogers. There is involved in the pending motion the validity of the exercise of the power of appointment conferred upon him by his father's will over the remainder of his trust. He left a widow, two children by his first wife, Henry H. Rogers, Third, and Mary Millicent Balcom, and certain grandchildren. The dispositions made by his last will and various questions arising in the administration of his estate have been the subject of litigation in the Surrogate's Court of Suffolk county.

The main proceeding now pending in this court involves the judicial settlement of the account of the trustees under his father's will. Henry H. Rogers, Third, the grandson of the testator, has filed an answer in the proceeding in which direct attack is made upon the legality of the exercise of the power of appointment by his father. The widow of Colonel Rogers, since remarried and now Mrs. Pauline V. Hoving, moves to strike out and dismiss the answer and the objections of Henry H. Rogers, Third, or, in the alternative, to strike out the objections contained in paragraphs numbered " 1 " and " 2 " of the answer upon the ground that the same are insufficient in law, and upon the further ground that the final decree of the Surrogate's Court of Suffolk county, rendered upon the merits, admitting the will of Colonel Rogers to probate, determines the same issues raised by the answer.

Paragraph " 1 " of that pleading alleges that the attempted exercise of the power of appointment by Colonel Rogers was invalid for the reason that it was executed " in consideration of a pecuniary benefit to the donee." Its alleged invalidity is based upon the charge that prior to the colonel's marriage to Mrs. Hoving, then Pauline Dresser, a written agreement was made whereby in consideration of her execution of a waiver of her right of election under section 18 of the Decedent Estate Law and in consideration of her marriage, Colonel Rogers promised to bequeath and devise to her in trust one-third of his individual estate after the payment of certain specific legacies and to appoint to her in trust one-third of the property over which he had a power of appointment under the will of his father. It is claimed that pursuant to that agreement a form of will was drawn, its terms agreed to by the wife of Colonel Rogers and thereafter the will and the waiver were executed on August 28, 1933. The parties were married on the same day.

It is also alleged that a subsequent will was executed by Colonel Rogers on January 13, 1934, and a similar waiver of rights under section 18 of the Decedent Estate Law was executed by his wife. The later will was similar in general terms to the earlier one except that a bequest in trust to Henry H. Rogers, Third, was increased from $100,000 to $500,000 payable out of his individual property. Other modifications immaterial here were made in the later instrument.

By his last will, Colonel Rogers, under the terms of paragraph twelfth, specifically exercised the powers of disposition and appointment given to him by the will of his father and made express disposition of the property subject to the power. He gave the income of one-third of the appointive property to his widow. He gave the income of the second third to his daughter, Mary Millicent, with the

remainder to her issue subject to certain contingencies. The remaining third he bequeathed in trust for the benefit of his grandson, Peter Salm, for life, with remainder to his issue and in default of issue to his heirs at law. Throughout these clauses dealing with the exercise of his appointment he repeatedly and expressly disinherited his son, Henry H. Rogers, Third, from any participation in the property subject to the power.

In sum, the attack made by the grandson upon the exercise of the power under the first paragraph of his answer is (1) the will of his father was a fraud upon the power; (2) it was exercised by an unlawful " bargain behind " in the form of the ante-nuptial agreement made by Colonel Rogers in favor of his wife, and (3) the attempted exercise was void and thereby the remainder passed under the will of Mr. Rogers, Sr., to the heirs at law of Colonel Rogers, viz., his daughter and the objectant.

The second paragraph of the answer sought to be stricken out charges that the attempted execution of the power was invalid because of the exercise of undue influence upon Colonel Rogers by his wife, in alliance with other persons, for the purpose of eliminating the objectant from receiving any benefit under the will of the testator.

The remaining portions of the answer assert further invalidity in the testamentary disposition of Colonel Rogers upon the ground that he has unlawfully suspended the power of alienation by appointment for the life of a person not in being at the death of the testator here and upon the further ground that the statute against perpetuities is violated by a suspension beyond the permissible statutory period.

The Surrogate's Court of Suffolk county and the Appellate Division, Second Department, have held that exclusive jurisdiction over the property passing under the power of appointment here is vested in this court. (*Matter of Rogers*, 250 App. Div. 26.)

The motion to strike out the entire answer of Henry H. Rogers, Third, is granted. The surrogate holds that he is not a person interested to any extent whatsoever in the pending accounting proceeding.

(1) It conclusively appears that there is not the slightest infirmity in the exercise of the power of appointment by any corrupt bargain or agreement to divert the property under the power of appointment to persons unauthorized to take under the wills of the donor and the donee. Considerable reliance is placed by counsel for the objectant upon my decision in *Matter of Carroll* (153 Misc. 649; modfd., 247 App. Div. 11; modfd., 274 N. Y. 288) to sustain his contention of illegality. The facts in that case and the terms of

the will there are essentially different from those involved here. In the *Carroll* case the surrogate held, and the Court of Appeals sustained his determination, that the agreement of the donee with her cousin, a proper object of the power under the donor's will, to appoint $250,000 to him on condition that he pay $100,000 to her husband, a person foreign to the limited class of appointees, constituted an unlawful and wholly void appointment and a fraud upon the power because of the corrupt bargain behind the appointment. There the class of persons to whom the appointment might be made was limited and the nature of the power was special. There the right of the donee, the daughter of the testator, to dispose of the property was restricted " to and among her children or any other kindred who shall survive her." Here the class of appointees was general and unrestricted, for under the will of the testator the appointment might be made " to such persons or corporations and in such manner " as Colonel Rogers might direct by his last will and testament. The determination in the *Carroll* case has, therefore, no application to the pending proceeding.

Support also for the contention that the ante-nuptial agreement between Colonel Rogers and his wife vitiated the exercise of the power of appointment here is based by counsel for the objectant upon the decisions of the Court of Appeals in *Farmers' Loan & Trust Co.* v. *Mortimer* (219 N. Y. 290) and *Central Trust Co.* v. *Dewey* (223 id. 726, affg. 179 App. Div. 112). These cases, however, have no application to the facts presented here.

In *Farmers' Loan & Trust Co.* v. *Mortimer* the donee borrowed $5,000 from a finance company. In consideration thereof the donee contracted with the finance company to bequeath to it the sum of $25,000. Pursuant to the agreement, he executed a so-called irrevocable will. Thereafter he executed a new will revoking the prior will and appointed the fund entirely to his relatives. The finance company brought suit for the specific performance of the agreement to appoint. The relief prayed for was denied. The contract to make the will was held to be equivalent to the execution of a power by deed which was unauthorized by the will of the donor.

Judge CARDOZO in that case said: " It was to be executed not by deed, but by will, and a will in its very nature is ambulatory. The exercise of the power was to represent the final judgment, the last will, of the donee. Up to the last moment of his life, he was to have the power to deal with the share as he thought best * * *. To permit him to bargain that right away would be to defeat the purpose of the donor. Her command was that her property should go to her son's issue unless at the end of his life it remained his will that it go elsewhere." The contract was held

unenforcible in the estate of the donor. It would have nullified not only the will of the donor, but also the statute which provides that a power of appointment by will may not be executed by grant. (Real Prop. Law, §§ 167, 168.)

In effect, the appointment to the finance company in the *Mortimer* case was held not to be invalid inherently, but unenforcible because revoked by the later will of the donee. The limitations upon the power did not relate to the persons to whom the appointment might be made, but, as stated by Judge CARDOZO, " upon the manner of its execution." To the same effect appears to be *Central Trust Co.* v. *Dewey* (223 N. Y. 726, affg. 179 App. Div. 112). Neither of these cases, therefore, has any pertinency to the issues involved here. The invalidity in each case arose out of an attempted exercise of the power by grant rather than by will. In neither case did the will contain a disposition carrying out the terms of the prior contract.

In England, as in New York, the authorities are in accord that where a power is testamentary and general and there is a covenant *inter vivos* to appoint, a contract controlling its exercise is not enforcible in equity for the reason that " such a contract, specifically performed, becomes the equivalent of a grant." The donee is, however, held liable in damages for the breach. (*Matter of Parkin*, L. R. [1892] 3 Ch. 510; *Palmer* v. *Locke*, L. R. 15 Ch. Div. 294 [1880]; *Matter of Evered*, [1910] 2 Ch. 147; *Reid* v. *Shergold*, 10 Ves. Jr. 370 [1805]; Sugden on Powers, [8th ed.] p. 214; Jarman on' Wills, [7th ed.] pp. 810, 811.) But the distinction between a will which fails to include the promised legacy and a will which carries the promise into effect is forcibly drawn in the English cases and the authoritive text books. Thus Sir Edward Sugden in his treatise on Powers ([8th ed.] p. 214), makes the following observations: " Where a person is tenant for life with a power to appoint the inheritance by *will* only, and is desirous to sell the fee-simple, he may convey to the purchaser for a long term depending on his life, and exercise the power in the purchaser's favour by will and covenant not to revoke it. The title of course will be incomplete during the vendor's life, as he may choose to revoke the will, and drive the purchaser to his remedy under the covenant: so he may revoke the will by a clandestine act, and leave no assets to answer the breach of covenant. But if the purchaser be willing to incur the risk, no objection can be raised to the execution of the power should it ultimately take effect."

In the English case of *Matter of Evered* (*supra*), which involved a negative covenant not to exercise the power granted to a donee in such a way as to reduce the share of a particular object of the

appointment below a certain amount, the Master of the Rolls, COUZENS-HARDY, in his decision enunciates what he characterized as some elementary and settled principles relating to powers, as follows: "In the first place, a power to appoint by will cannot be executed by deed. In the second place, a covenant to appoint by will in a particular way cannot be the subject of specific performance or have any legal obligation. * * * In the third place, an exercise of the power by will is not rendered invalid by reason of the fact that the appointor has covenanted to make such an appointment, there being no other circumstance which might render the appointment invalid apart from the covenant."

The foregoing reflections of the English authorities relate only to the exercise of powers which are general and beneficial and not to limited or special powers which are inherently different in their nature and effect. There can be no breach of any fiduciary obligation by the donee where the power is general and beneficial, since he may exercise it in favor of such person or persons as he might choose. There is neither a trust nor an obligation in the nature of a trust because the power is not coupled with a duty. (*Lyon* v. *Alexander*, 304 Penn. St. 288; 156 A. 84; *Cutting* v. *Cutting*, 86 N. Y. 522, 543; *Farmers' Loan & Trust Co.* v. *Kip*, 192 id. 266, 279.)

By reason of these rules, it follows that if the donee appoints pursuant to an agreement and if his will otherwise complies with the scope of the unlimited authority given in the donor's will, it must be given effect and the alternative remaindermen who might take in default of the exercise of the power are without legal status to attack its dispositions.

To summarize, there is a clear distinction between the *Mortimer* case, so strongly stressed by counsel for the objectant, and the instant case. In the *Mortimer* case the agreement to bequeath never found its way into the last will. The agreement could not be enforced by judicial direction. Here the ante-nuptial agreement was effectuated by the last will of the donee which was duly admitted to probate. The existence, however, of the agreement or "bargain behind" the exercise of the power could not legally taint or destroy a disposition authorized by the grant of unrestricted discretion given by the donor. The arrangement under the ante-nuptial agreement was in no sense fraudulent or even objectionable. The wife of Colonel Rogers was clearly within the unlimited class of objects of the appointive power. "It is a power to appoint by will, to whom the estate shall go, after the decease of the donee of the power. The choice of the future beneficiary is left to the judgment, to the inclination, nay even to the caprice of the donee of

the power." (FOLGER, Ch. J., in *Cutting* v. *Cutting, supra,* at p. 543.) The exercise of the power, therefore, by the donee through the instrumentality of his last will was in accordance with the will of the donor and must be sustained.

(2) The charge of Henry H. Rogers, Third, contained in the second subdivision of his answer, that the attempted exercise of the power by his father was invalid and of no effect for the reason that undue influence was brought to bear upon him to exercise the power in favor of his prospective wife raised no triable issue in this court. He is concluded from attacking the formality of execution or testamentary capacity or freedom from restraint of the testator by the decree of the Surrogate's Court of Suffolk county which admitted to probate the will of his father. That will was filed for probate in the Surrogate's Court of that county on July 30, 1935, and the citation in the probate proceeding was duly served upon all the distributees, including the objectant here. The objectant formally appeared in the proceeding by his attorneys on September 16, 1935, the return day of the citation. On that date an order extending to October 14, 1935, his time to file objections, answer or otherwise move in connection with the probate of the will was made by the surrogate. On October 14, 1935, he again appeared by his attorneys, requested and obtained an order for a further adjournment to October 28, 1935. On October 24, 1935, the attorneys for Henry H. Rogers, Third, conducted an oral examination of the subscribing witnesses and on October 28, 1935, the adjourned return date of the citation, his attorneys announced to the surrogate that no objections to the probate of Colonel Rogers' will would be filed. On the very same day a decree was made by the surrogate of Suffolk county admitting the will of Colonel Rogers to probate. It thus appears that the respondent had ample time and every opportunity to file objections to the will on the ground of undue influence or for any other alleged ground for denial of probate. He did not do so. He is, therefore, estopped from raising the issue of undue influence, not only because the decree of probate is *res adjudicata,* but also because of his own affirmative conduct in the probate proceeding. (Surr. Ct. Act, §§ 80, 144.) He had his day in court and cannot relitigate in this forum any question as to the exercise of restraint upon his testator. No appeal was taken from the decree. In each of four subsequent proceedings in the estate of Colonel Rogers in Suffolk county, Henry H. Rogers, Third, appeared but raised no question as to the adjudicated legality of the will.

As authority for the contention that the decree of probate of the Surrogate's Court of Suffolk county is not *res adjudicata*, considerable stress is laid by counsel for the objectant upon my decision in *Matter of Harriman* (124 Misc. 320; affd., 217 App. Div. 733). That case, however, has no application here. The will of the donee had been denied probate in the State of domicile, California. The will of the donor had been admitted to probate by the Surrogate's Court of New York county and that court had jurisdiction over the validity or invalidity of the appointive dispositions. The decision of the surrogate, which was affirmed by the Appellate Division upon the opinion below, pointed out that " it is the established law of this State that the courts of New York alone must determine the validity and effect of an instrument, whether will or deed, which purports to exercise a power of appointment under the will of a New York donor. That principle applies, * * * not only to the construction of the will of the donee, but also extends to the jurisdiction to admit or reject it as a will under the criteria of our probate law." (Citing *Blount* v. *Walker*, 134 U. S. 607; *Matter of New York Life Insurance & Trust Co.*, 209 N. Y. 585, affg. 157 App. Div. 916, affg. 139 N. Y. Supp. 695.) For these reasons, I held that our courts had the power to inquire as to whether or not the will of the donee was properly denied probate by the courts of California and whether or not the evidence of alleged undue influence there proven would have been sufficient if presented in the courts of this State, to warrant denying probate, especially where rights of infants were involved and no statutory safeguards like those contained in section 347 of the Civil Practice Act were resorted to, in order to protect the interests of infant beneficiaries.

Nor does my decision in *Matter of Trowbridge* (124 Misc. 317), urged by counsel for the objectant as an authority here, in any way support his contention. The will of the donee there was admitted to probate by the Surrogate's Court of Westchester county. The donor's will was probated in New York county. No infirmity of execution or other defect in the nature of the instrument as a will was asserted in this court. The will of the donee was held by the Surrogate's Court of New York county as a matter of construction to be invalid and void as an execution of the power of appointment because the objects of the power were not within the limited class of appointees designated in the donor's will and additional estates were attempted to be created in violation of the statute against perpetuities.

The rules upon this phase of the case are simple and clearly understandable. *First*, where the donee's will is admitted to probate or established in a foreign State or country, the courts of New York

may accept it as a valid testamentary instrument as a matter of comity, or may reject it in an independent proceeding where justice requires a denial of probate. (*Matter of Harriman, supra; Matter of New York Life Insurance & Trust Co., supra.*) *Second,* where the will of the donee has been admitted to probate by a decree of the Surrogate's Court of this State, the validity of its execution as a testamentary instrument may not be relitigated or attacked in the Surrogate's Court or in the Supreme Court having jurisdiction of the estate of the donor. The decree of probate forever concludes every person who was cited in the original probate proceeding. (*Cassidy* v. *Savage,* 150 Misc. 127, Schenck, J.; *Post* v. *Mason,* 91 N. Y. 539.) The rules in England are similar. (*Tatnall* v. *Hankey,* 2 Moore P. C. C. 342; *Barnes* v. *Vincent,* 5 id. 201.)

The decree of the Surrogate's Court of Suffolk county, dated October 28, 1935, is, therefore, binding and conclusive upon the respondent.

(3) Under the third and subsequent paragraphs of his answer, the objectant attacks the exercise by Colonel Rogers in article " twelfth " of his will of the powers of disposition and appointment as invalid because its provisions violated our statutory rules against perpetuities. The objectant is not in any position to question the validity of the trusts. It is sufficient to state that paragraph " sixteenth " of Colonel Rogers' will made a valid alternative gift, in case of a determination of the invalidity of any trust created in it. In such event he provided that the trust provisions be eliminated and that the fund be given outright to the designated life beneficiary of such trust. Thereby he anticipated a possible invalidity because of unlawful suspension beyond the permissible statutory period either for the number of lives in being or for a life not in being at the death of the donor. If these contingencies be determined by decree, total testacy and legality will be effectuated by the alternative dispositions. It is within the power of the surrogate to determine the legality of the primary trust dispositions, but the objectant has no legal status to participate further in this proceeding. By his complete disinheritance he is barred from asserting that he has been denied any rights whatsoever either under the will of the donor or of the donee.

Submit order on notice granting the application to strike out the entire answer and all the objections to the account filed by the respondent in this proceeding.