In the Matter of the Estate of PRENTISS N. GRAY, Deceased.

Surrogate's Court, New York County, July 2, 1941.

*Sullivan & Cromwell,* for the petitioners.

*William A. Nunlist,* for William A. Nunlist and Marshall B. Nunlist, as trustees, etc., respondents.

*Hawkins, Delafield & Longfellow,* for the American Museum of Natural History.

*Americus Delli Paoli,* special guardian.

FOLEY, S. The single issue presented here is the amount that a legatee is entitled to receive under the provisions of the fourth paragraph of the will. A proceeding for the construction of the will has been consolidated with the proceeding to settle the account of the executors. Upon the hearing before the surrogate it was stipulated that the only question in both proceedings was the question of construction, and all objections tending to raise other issues in the accounting proceeding were withdrawn.

The fourth paragraph of the will reads as follows: " I give and bequeath to my secretary, Hazel W. Nunlist, if she shall survive me, the sum of Twenty-five thousand Dollars ($25,000) or a sum equal to one-eighth (1/8) of my residuary estate hereinafter in Article Fifth hereof referred to computed without allowance for the amount of this legacy, whichever of said two sums shall be the lesser."

The fifth paragraph, to which reference is made in the previous paragraph, disposed of the residuary estate, which was set up in several trusts. One-third of it plus an amount equal to one-third of the value of the legacies in the first two paragraphs of the will was to be held in trust for the benefit of his widow for her life. Each of his sisters was a life beneficiary of one-ninth of his residuary estate. The remainder of the residue was to be held for the benefit of his two children for their respective lives. The children were the primary remaindermen of all of the trusts.

In the fifth paragraph the testator also expressly exercised any power of appointment which he possessed. The power thus exercised was a limited and special power vested in him over a fund which he had created *inter vivos* for the benefit of his former wife, from whom he was subsequently divorced. The restrictions on the exercise of the power compelled him to appoint to his sisters or his issue. These restrictions prevented him from appointing the property to his second wife, his secretary or any one outside the limited class. By the separation agreement with his former wife his estate was required to make certain additions of money to the corpus of the trust, which the executors have paid and have deducted from the gross assets as a debt of the decedent.

The questions to be determined in this proceeding are: (1) What deductions are to be made from the gross estate in order to arrive at the residuary estate, within the meaning of the terms used in the fourth and fifth paragraphs of the will? (2) Did the testator intend to include in his residuary estate for the purpose of computing this legacy, certain property over which he had a special power of appointment?

Mrs. Nunlist has created an *inter vivos* trust for her own benefit and included therein this legacy. The trustees under that instrument of trust are the petitioners in the construction proceeding and the objectants in the accounting proceeding.

On the basis of one-eighth of the residuary estate, the executors have computed the amount of this legacy to be $5,824.26. It is contended by the petitioners on behalf of the legatee that the executors have misconstrued the will and should have included other sums in the residuary estate for the purpose of determining the amount of this legacy. They argue that for the purposes of this paragraph of the will, the testator intended his residuary estate to be the total of all of his property at the time of his death, less only funeral expenses, ordinary debts and the legacies provided for in the previous paragraphs of the will. In this computation of the residuary estate no deduction has been made for administration expenses, estate taxes, or for payments made by the executors under the terms of a separation agreement entered into by the testator and his former wife and a trust indenture executed contemporaneously therewith.

No objection is made to the propriety of such payments by the executors nor to the amount of any claim paid out of the assets of the estate. The dispute arises out of differing interpretations of the testator's intent in respect of the words " my residuary estate " as used in the will.

(1) The words " residuary estate " have a well-settled and established meaning and are familiar terms in probate practice and in the interpretation of wills. The residuary estate carries everything of which the testator died possessed and of which no effectual disposition is elsewhere made in the will. (*Riker* v. *Cornwell*, 113 N. Y. 115, 124; *Matter of Hoffman*, 140 App. Div. 121.) It is what remains after deducting debts, legacies and expenses of administration. (*Morton* v. *Woodbury*, 153 N. Y. 243, 251; *Matter of Mahlstedt*, 140 Misc. 245, 256; *Matter of Brooklyn Trust Company*, 179 App. Div. 262, 264.)

The intention of the testator in respect of this legacy is clear. He wished to make a substantial bequest to his employee, which he tentatively fixed in amount. At the same time he realized that

his estate was subject to considerable diminution under certain eventualities which might occur. His second wife, his two children and his sisters, who were the residuary legatees, were the objects of his particular solicitude and concern. He realized that while under certain contingencies the stated amount might not consume a disproportionate share of his estate, yet under other conceivable circumstances it might operate to deprive the members of his immediate family of those benefits which he intended for them. He made provision for every eventuality. The whole purpose of this alternative provision was to insure a fair proportion between this legacy and the legacies to the primary objects of his bounty.

In the use of the words " my residuary estate " in the fourth paragraph he intended the same meaning as when he used them in the succeeding paragraph. He used the terms in their usual and ordinary sense. There is no competent evidence that would warrant the conclusion that he intended any other meaning to be ascribed to them.

The surrogate, therefore, holds that in the computation of the residuary estate for the purpose of determining the amount of this legacy, it was proper for the executors to deduct the amounts paid to the Fiduciary Trust Company of New York. These sums were paid pursuant to a separation agreement entered into by the decedent and his former wife, and an indenture of trust executed by the decedent and the corporate trustee on the same day. It would serve no useful purpose to detail the provisions of these instruments. The agreement of separation provided for payments to be made by the husband to the trustee. The trust deed contained identical provisions and set forth the duties of the trustee and the rights of the wife as beneficiary. The trust was to terminate upon the death or remarriage of the wife, except for a small sum to be held during a period from her remarriage to her death. Express provisions were made respecting the liability of the husband's estate in the event that he died prior to the termination of the trust before discharging all obligations imposed upon him by the agreements.

The executors and the trustee have agreed upon the amount due from the estate by virtue of the agreements. No contention is made that they have erred in their calculation of the sums due the trustee or in their interpretation of the agreements. The only argument made is that this is not to be considered a " debt " of the testator and was not intended to be a deduction in the computation of this legacy

These agreements imposed valid obligations upon the testator and upon his estate. There can be no question that an agreement to provide for the support of a wife during her entire lifetime and

beyond the husband's death can be enforced against his estate. (*Matter of Hoyt*, 174 Misc. 512, 515; *Matter of Bloomingdale*, 278 N. Y. 435; *Matter of Tanenbaum*, 258 App. Div. 285.) The argument that the testator considered this obligation in a category separate from his other debts is without any foundation in the evidence and is based upon pure speculation.

The executors properly deducted the administration expenses, executors' commissions, estate taxes, and the actual decrease in the value of the assets. The estate taxes were expressly directed to be paid out of " my residuary estate as part of the expenses of administration." Since this legacy is to be computed by the same standard of measure as the residuary legacies, all such deductions were properly made.

The surrogate holds, however, that the executors erred in failing to include in their computation the net income earned during the period of administration. Such income belongs to the residuary estate and should be included therein for the purpose of measuring this bequest. An affidavit must be submitted by the executors showing a recomputation of this legacy with such income included. The total corrected amount when calculated is directed to be set forth in the decree.

(2) The further question is presented as to whether the testator intended to include within his residuary estate, as those terms are used in the fourth paragraph of the will, property over which he had a special and limited power of appointment. Under the terms of the deed of trust, the corpus of the trust was to be paid to the testator upon the death or remarriage of his former wife, or if he were not then living, to such of his sisters or issue as he should appoint in his will. It is conceded that this is the only property over which the testator had a power of appointment.

In the residuary clause the testator bequeathed all of the property of which he was seized or possessed " or over which I may have any power of appointment or disposition at the time of my death." The residue of his estate was set up in trust for his second wife, his two sisters and his children. It is argued that the testator intended the value of this property to be taken into account in the computation of this legacy.

The surrogate holds that this appointive property is no part of the testator's residuary estate and that he did not intend that this property should be taken into account in fixing the amount of the legacy given to Mrs. Nunlist, his secretary, by the fourth paragraph of the will.

There is no evidence of an intention to merge the appointive property with the individual estate of the testator. Indeed, the

very contrary appears from an examination of the will. There is not here, as there was in *Matter of Wainwright* (248 App. Div 336, 342), a general power of appointment. The power involved here was a special testamentary power, limiting the appointment to the sisters or the issue of the grantor. Under the residuary clause of the will more than one-third of the net estate was set up in a trust for the widow of the decedent, a person not within the class of permissible appointees.

More persuasive, however, is the fact that the testator knew that property passing under this power of appointment could not be brought into his estate at the time of his death. The property was the subject-matter of a trust measured by the life of another person. If his first wife had predeceased him, the property was to be paid over to him immediately and the power of appointment over it would expire. The power could be effectively exercised only in the contingency that he died during the continuance of the trust. In such event he could not know how long a time would elapse before the termination of the trust by either her death or remarriage.

Not only has no part of the appointive property been paid to the executors or trustees of this estate, but it cannot be here determined whether the exercise of the power was effective to bring any of this property within this estate in the future. Even if the power were validly exercised it would be impossible to foretell just how much property would pass to his appointees. Certain rights of invasion of the principal exist and a substantial portion of the corpus may be consumed before the trust terminates. Even if we were to calculate the present value of the trust property based upon the expectancy of life of the beneficiary, we should have no way of measuring the extent of the invasions of corpus and the actual value of the assets when the trust administration is terminated.

The testator intended that this legatee should take no more than one-eighth of his net individually owned estate and that the remainder should be available for the residuary trusts. If the value of the appointive property were to be taken into account in the calculation of this legacy, the legatee would presently receive a large proportion of the individual estate of the testator, and the beneficiaries of the residuary trusts would be compelled to wait upon the course of future events for their share. That such was the intent of the testator is inconceivable.

In ascertaining the intention of the testator, the surrogate has not attempted to determine the question of the validity, in whole or in part, of the exercise of the power of appointment over the *inter vivos* fund. The validity or invalidity of the exercise and its scope must be determined in the Supreme Court in an appropriate proceed-

ing or action. (*Matter of Lyon*, 266 N. Y. 219; *Matter of Crosby*, 136 Misc. 688.) This situation is similar to the power of the Surrogate's Court having jurisdiction over a donor's estate to determine all questions arising out of the exercise of the testamentary power. The Surrogate's Court having jurisdiction of the donee's estate is without power to determine such questions. (*Bishop* v. *Bishop*, 257 N. Y. 40; *Matter of Harriman*, 124 Misc. 320; affd., 217 App. Div. 733; *Matter of Rogers*, 250 id. 26; *Matter of Rogers*, 168 Misc. 633; *Matter of Trowbridge*, 124 id. 317.)

Only a few of the factors inherent in the problem of the validity of the exercise of the power have been touched on here. We are dealing merely with a problem which affects directly only the distribution under the will of the testator in his legacy to Mrs. Nunlist which can be paid only out of his individual property.

In summary, the surrogate holds that (1) the computation of the amount of this legacy as made in Schedule H of the account is correct except for the failure to include therein the income as shown in Schedule H-1; (2) the appointive property must be excluded from consideration in the ascertainment of the amount of the legacy.

Submit decree on notice construing the will and settling the account accordingly.