In the Matter of the Accounting of WILLIAM W. CARMAN et al., as Executors and Trustees under the Will of ARTHUR C. JAMES, Deceased.

Surrogate's Court, New York County, September 20, 1946.

*Robert E. Coulson, Patrick H. Sullivan, William G. Chambers* and *Archibald H. Cashion* for William W. Carman and another, as executors and trustees, petitioners.

*Frank Sowers* and *James H. Black* for Robert Hoe and others, respondents.

*William E. Mills* for Ruth H. Sterling, respondent.

DELEHANTY, S. The testamentary plan of deceased was designed primarily to assure the welfare of his wife. Secondarily deceased desired to devote his wealth in great part to charity. He made provision that one tenth of a sum ascertained by a particular formula should pass to remote relatives and that another tenth of such sum should pass to his wife's estate if she predeceased him. The testamentary plan provided for outright gifts and gifts in trust which are import-

ant here only because they enter into the operation of the formula just noticed. There is special provision for the impact of succession taxes to which reference must be made hereafter. It is relevant also to note that had deceased's wife survived him his trustees were directed to maintain deceased's realty for her use and to assure her enjoyment of all his tangible personalty connected with the realty. After the death of the wife the property so available for her use passed under paragraph eighth of the will as amended by the codicil.

The particular provisions of deceased's testamentary scheme which give rise to the issues in this accounting proceeding are found in the tenth and fourteenth paragraphs of the codicil executed on April 17, 1941. The tenth paragraph of the codicil provides for the impact of taxes in this language: " I direct that all of the gifts and bequests in cash, provided in my said will, as amended, and in this codicil, be paid to the beneficiaries, in the discretion of my executors, as soon as may be after my death. I direct that all estate, inheritance and transfer taxes upon such legacies be paid from my residuary estate, so that said legacies may be received by the beneficiaries thereof, so far as may be lawful, tax free. I direct that such legacies be paid by my executors at the face amount thereof, without any additions thereto on account of interest, regardless of the time of payment.'' In the fourteenth paragraph of the codicil the executors are directed to " set aside an amount in monies, securities and other properties equal to one-tenth (1/10th) of my residuary estate, as determined after payment of all legacies and bequests provided by the third, fourth, fifth and seventh paragraphs of my said will as amended by this codicil, and the legacies provided by the second and ninth paragraphs of this codicil to my said will, and of all debts, expenses of administration, taxes (including any estate, inheritance and transfer taxes paid on account of legacies and bequests pursuant to paragraph tenth of this codicil to my will), and like charges  *  *  *.'' The gifts under the third, fourth and seventh paragraphs of the will which are referred to in the quoted text are all gifts in trust. The gifts under the fifth paragraph of the will and under the second and ninth paragraphs of the codicil are outright gifts.

The fourteenth paragraph of the codicil directs that the one tenth of the sum ascertained under the quoted text is to be divided by the executors and paid over to collateral relatives of deceased numbering eighteen in all. Six of these

eighteen have objected to the account and assert that the executors failed to allocate to them the full amounts to which they are entitled. These objectants say that they are true residuary legatees and that they are entitled to share in all property which becomes part of the residue, including a share in the property disposed of by the third, fourth and seventh paragraphs of the will. In computing the shares of objectants the executors excluded all of the property mentioned in such paragraphs.

The court holds that objectants are not entitled to share in any of the property or assets dealt with in the third, fourth or seventh paragraphs of the will. Deceased did not give objectants a share in his general residuary estate. He gave them only a share of the " residuary estate, as determined " under a formula specifically set forth in his codicil. He listed in express terms the deductions to be made from his gross estate in fixing the shares of objectants. Deceased's formula specifically excludes the real property devised in the third paragraph, the furnishings and equipment bequeathed in the fourth paragraph and the amounts set aside for the " annuity " trusts under the seventh paragraph as well as all his outright bequests. The intent of deceased is clear and the failure of the trusts for his wife because of her death does not alter the formula. The action of the executors in computing the shares of objectants is supported by the mandate of the will and hence, the first, third, fourth, eighth and tenth objections filed by Robert Hoe and others are overruled.

Objectants also challenge the charging of estate taxes against their respective shares. As already noted, objectants with others take one tenth of the sum determined under the formula just discussed. Deceased's wife's estate takes a like sum. The remainder goes to the James Foundation, a charitable corporation wholly exempt from estate taxes. The executors deducted from the gross fund the other legacies, all debts, expenses of administration and like charges, but included in the deductions only the estate taxes paid on account of *cash* legacies. The balance of the estate was allocated proportionately to the beneficiaries of the " formula " gifts (one tenth each) and to the James Foundation. The executors then charged the remaining estate taxes to the " formula " beneficiaries. Objectants contend that this method has imposed upon them an undue burden and that all estate taxes should have been deducted before the division of the fund into shares. The executors assert that their procedure is justified by the

quoted text of the tenth paragraph of the codicil and by the fact that James Foundation is a charity. They argue that such quoted text indicates an intent of deceased that all beneficiaries other than the recipients of " gifts and bequests in cash " should bear their proportionate share of estate taxes. It is conceded that the " formula " gifts are not embraced within the term " gifts and bequests in cash ".

The court is not required to spell out by implication deceased's testamentary intent respecting estate taxes. He expressly states his purpose and intent in this respect. As the court has hereinabove stated, objectants are to receive a share in a fund computed under a specified formula. This formula expressly provides the deductions to be made from the gross estate before division into tenths. The group of which objectants are part is entitled in the aggregate to one tenth of the net result. The formula directs that there be deducted from the gross fund " all * * * taxes (*including* any estate, inheritance and transfer taxes paid on account of legacies and bequests pursuant to paragraph tenth of this codicil to my will) * * *." (Emphasis supplied.) The plain and literal meaning of this text requires that *all* estate taxes be deducted before allocating to objectants one tenth of the net fund. The direction to deduct " all * * * taxes " is not modified by the subsequent express inclusion of the estate taxes allocated against the residue by the tenth paragraph of the codicil. Perhaps the text used by deceased was desirable to obviate the claim that such taxes were allocated against the general residue rather than the particular or formula residue. In any event the word " including " and the text following were not intended to restrict the prior direction but rather to clarify it (*Red Hook Cold Storage Co.* v. *Department of Labor*, 295 N. Y. 1, 8). Because in the will of deceased there is an express and unambiguous direction which commands the deduction of *all* succession taxes before computing objectants' share objection seventeen filed by Richard Hoe and others and the objections in writing filed by Ruth Hoe Sterling are sustained.

The executors have allocated all of the income of the estate to the James Foundation on the theory that it is the sole residuary legatee under the eighth paragraph of the will and entitled to all of the income. The court holds that objectants are entitled to their prorata share of the income earned on the body of property in which they are entitled to share (*Matter of Gray*, 176 Misc. 829). There is nothing in the will or

codicil which excludes them from sharing in such income. The second and ninth objections of Robert Hoe and others are accordingly sustained.

Objectants are not entitled, however, to income earned on assets specifically excluded from their shares. They have no interest in the so-called " annuity " trusts created in the seventh paragraph of the will. Objectants' sixth, seventh, twelfth, thirteenth and fourteenth objections are overruled.

This court has no jurisdiction to make any determination in respect of the distribution of the property in the *inter vivos* trusts (*Matter of Gray,* 176 Misc. 829, *supra,* affd. 266 App. Div. 732, affd. 292 N. Y. 532; *Bishop* v. *Bishop,* 257 N. Y. 40; *Matter of Lyon,* 266 N. Y. 219; *Matter of Harriman,* 124 Misc. 320, affd. 217 App. Div. 733; *Matter of Rogers,* 250 App. Div. 26). Objectants' fifth and eleventh objections are therefore overruled.

In arguing various questions of construction raised by the objections the executors have sought to sustain their position under the authority conferred upon them in the concluding sentence of the fourteenth paragraph of the codicil which says: " I direct that the determination of my said executors and trustees as to the amount in cash, securities and other property which shall equal one-tenth of my residuary estate, *determined as hereinabove provided,* shall be final and binding upon all persons interested in my estate." (Emphasis supplied.) The attempted grant to an executor or trustee of power to make a binding and conclusive fixation of the value of any asset for purposes of distribution, allocation or otherwise is contrary to public policy and void (Decedent Estate Law, § 125). In any event, however, the attempted grant of power by deceased does not give to the executors the power to make distribution contrary to the express terms of the will. The power must in any case be exercised within the framework of the will.

The remaining objections relate to the disposition of particular securities by the executors. In respect of the stock of A. C. James Co. objectants say that it was divisible and should have been distributed in kind but in view of the general testamentary plan of deceased for the disposition of his unliquid securities the executors were entirely within their rights in allocating such shares to the Foundation so that deceased's plan for a liquidation over a twenty-five-year period might be carried out. The fifteenth objection relates also to the *price* at which the executors delivered to the Foundation these

shares of the A. C. James Co. and certain notes of Western Pacific Railroad Corporation and the collateral to such notes. All of the securities involved in this objection relate directly or indirectly to Western Pacific Railroad which since 1935 had been in the process of reorganization under section 77 of the Bankruptcy Act (U. S. Code, tit. 11, § 205). (*Ecker* v. *Western Pacific Railroad Corp.*, 318 U. S. 448, 453.) At the time of the action of the executors in relation to the securities in issue a plan which had been approved by the District Court of the United States was under consideration in the United States Supreme Court after a disapproval of the plan by the Circuit Court of Appeals. Argument of the appeal in the Supreme Court had been had and at the time of the allocation a decision was momentarily expected. The decision in fact was rendered on March 15, 1943. It reinstated the plan of reorganization approved by the District Court and as a consequence the securities had an immediate rise in market value.

Some brief comment on the estate securities in controversy must be made. All of the common and preferred stock of Western Pacific Railroad *Company* (hereinafter called Operating Company) was owned by the Western Pacific Railroad *Corporation* (hereinafter referred to as the Holding Corporation). Deceased owned, either directly or through personal holding companies, a majority of the shares of stock of the Holding Corporation. The executors held all of the issued stock of A. C. James Co., whose sole asset (other than a small amount of cash) was a claim in bankruptcy against the Operating Company based upon its notes which were secured by its general and refunding bonds due in 1957. These bonds were a special issue having no general market. The executors also held notes of the Holding Corporation in very substantial amounts which had no value apart from the collateral securing them. The collateral consisted of first mortgage bonds of the Operating Company due in 1946, mortgage bonds of another railroad in bankruptcy and all of the issued stock of Western Realty Company. The only securities in this list which were traded in the open market were the 1946 bonds of the Operating Company. The executors regarded them as nonliquid in their hands for the reason that they had only a pledgee's title.

On March 1, 1943 (two weeks before the Supreme Court acted), the trustees of the James Foundation of New York Inc., transmitted to the executors a written proposal that it

would acquire for cash two one-tenth interests in approximately one hundred nonliquid and nondivisible assets listed in a schedule annexed to the proposal. The price to be paid for each asset was separately listed in the schedule. The Foundation proposed as legatee to take distribution in kind of the remaining eight-tenths interest in such securities. In the offer were included the stock of A. C. James Co. and the notes of the Holding Corporation together with all of the collateral. The Foundation proposed to take at inventory value all of the listed assets except the 1946 bonds of the Operating Company which were part of the collateral to the Holding Corporation notes. These are the bonds which had a market and the Foundation offered to pay the market price as of February 15, 1943.

Under the terms of the will of deceased there was substantial identity between the executors and the trustees of the Foundation. The individual executor was president of the Foundation. An officer of the corporate executor was a trustee of the Foundation. The other trustees of the Foundation were employed by the executors. No criticism is or can be made of these dual capacities but in view of the transactions between the estate and the Foundation, the relationship becomes material. The formal written offer of the Foundation was accepted by a formal writing of the executors dated March 12, 1943. Three days later the decision of the United States Supreme Court gave a definitive turn to the reorganization proceeding which resulted in increase of the market price of the Operating Company's securities. In their acceptance of the proposal the executors stated that all of the beneficiaries had been advised of its terms and that the executors would in due course advise the Foundation "as further responses are received." Under date of March 24th, the executors notified the attorneys for certain objectants that their time to act upon the proposal of the Foundation would be extended until April 15, 1943, and stated that the trustees of the Foundation "are also willing that you have the additional time in order to deal with the proposal."

It is clear therefore that the decision to make distribution was not definitively made until long after the formal acceptance. The securities were not actually delivered to the Foundation until sometime in the month of April when the market quotations on the Operating Company bonds were considerably higher than the price at which the Foundation agreed to

receive them. In form the transaction between the executors and the Foundation was a sale. In reality it was nothing more than a consent by one legatee to take certain assets in kind at an agreed price. Although it elected to pay cash for the two-tenths interest so acquired, this amounted to nothing more than an adjustment on the property currently received by it. The court must look through the form of the transaction to its substance. When assets are being distributed among legatees of the same class, the executors must treat all of the legatees fairly and equally. One of the beneficiaries cannot be permitted to elect to take certain assets valued as of a prior date and actually receive them at a later time when their value has enhanced, if such distribution is effected at the expense of the other legatees. Such a method of division into shares ignores the rights of other legatees of the same class. All of them must be treated on a parity and all must be dealt with in the same way, without preference or prejudice.

There is no charge of bad faith on the part of the executors nor is there charge of deliberate intent to benefit the James Foundation at the expense of the other legatees. Many securities were allocated in kind to the beneficiaries who complain. Some valued as of February 15, 1943, were set aside for each of the objectants. If all parties interested receive a ratable share of the same type of investment, the valuation date is immaterial. It may, however, be necessary to inquire whether on an over-all view of the distributions there has been discrimination against any of objectants. So far as the present proof indicates there is no suggestion that there was any corresponding loss to the Foundation in respect of the general list of securities to compensate for the benefit conferred upon the Foundation in respect of the railroad securities which have been discussed. It may, however, be the case that the proof does not adequately develop the facts so as to permit the court to see whether there was in fact the inequality of which alone the beneficiaries can complain. If, in respect of some other of the securities distributed, they obtained a compensating preferential treatment over the Foundation that must be taken into account. If the executors and the Foundation are desirous of a further hearing for the purpose of developing the facts as to the values at the time of actual distribution of the general body of securities a request for a further hearing will be granted. If, on the other hand, the executors and the Foundation do not desire such further hearing an adjustment of the

shares of objectants will be required in respect of the values to be assigned to the railroad securities. Such values must be computed as of the time of actual distribution to the Foundation. Definitive ruling is made on objection fifteenth in favor of objectants only if the executors and the Foundation shall fail to ask for a further hearing.

The sixteenth objection relates to the sale of certain securities which had been allocated to objectants. The securities were sold by the executors in order to provide cash to reimburse them for estate taxes charged against objectants. The interpretation of the will in respect of estate taxes was in dispute between the executors and objectants. Under the executor's interpretation cash was required in order to reimburse the estate. Objectants are not entitled to receive any specific proportion of their shares in securities but only to have set aside the stated amount " in monies, securities and other properties ". No loss to objectants has been established in the sale of the securities. The sixteenth objection is accordingly overruled.

At the beginning of the hearing the court permitted Ruth H. Sterling to adopt the objections of Robert Hoe and four other beneficiaries insofar as the objections related to the pending account. The rulings made on the objections of Robert Hoe apply to objectant Ruth H. Sterling to the extent that she has been permitted to adopt the objections.

If the executors and the Foundation seek no further hearing on the fifteenth objection, a decree may be submitted on notice construing the will and settling the account accordingly.