In the Matter of the Construction of the Will of Arthur C. James, Deceased.

Surrogate's Court, New York County, May 9, 1950.

*Reese D. Alsop* for James H. Larson, as executor of Maud P. Larson, deceased, petitioner.

*Pandia C. Ralli* for United States Trust Company of New York, as trustee under the will of Arthur C. James, deceased, respondent.

*William G. Chambers* and *Archibald H. Cashion* for James Foundation of New York, Inc., and others, respondents.

FRANKENTHALER, S. The court is asked to determine whether the will of the testator contains a direction that estate taxes are not to be apportioned against an *inter vivos* trust fund. A preliminary question is raised respecting the admissibility of evidence of extrinsic facts in aid of construction. Both questions have been submitted to the court.

The testator died on June 4, 1941, leaving a will dated August 6, 1931, and two codicils. On April 23, 1915 — many years before the execution of his will — the testator and his wife

created a trust for Maud P. Larson, who was one of the sisters of Mrs. James. That trust has now been taxed in the estate of Mr. James. Mrs. Larson received a part of the fund after the death of the testator, the balance being held by the trustee of the *inter vivos* trust to satisfy estate taxes that might properly be allocated against the fund. Petitioner is executor under the will of Maud P. Larson, now deceased.

The testator made four express references to estate taxes. In the first paragraph of his will he directed payment of debts, expenses and " also of all taxes on the legacies and devises herein." The tenth paragraph of the first codicil related only to gifts of cash made in the will and codicil and it directed that " all estate, inheritance and transfer taxes upon such legacies be paid from my residuary estate, so that said legacies may be received by the beneficiaries thereof, so far as may be lawful, tax free." It is conceded that these directions can have no application to property passing outside the will. The thirteenth and fourteenth paragraphs of this codicil are parallel provisions for two different groups of beneficiaries. The thirteenth paragraph reads as follows: " In the event that my wife, Harriet Parsons James, shall predecease me  *  *  *  I direct that my executors and trustees, hereinafter named, set aside in monies, securities or property,  *  *  *  an amount equal to one-tenth (1/10th) of my residuary estate, as *determined after payment* of all legacies and bequests provided by the Third, Fourth, Fifth and Seventh paragraphs of my said will as amended by this codicil, and the legacies provided by the Second and Ninth paragraphs of this codicil to my said will, and *of all* debts, expenses of administration, *taxes* (including any estate, inheritance and transfer taxes paid on account of legacies and bequests pursuant to Paragraph Tenth of this codicil to my will), *and like charges,* and pay over or transfer the same to the personal representatives of my said wife, Harriet Parsons James, in order that the same may be distributed under her last will and testament, and as a part of her personal estate." In the petitioner's construction, the words emphasized above are read together so that the paragraph disposes of " an amount  *  *  * determined after payment  *  *  * of all ,  *  *  * taxes  *  *  * and like charges."

The fourteenth paragraph of the first codicil is for the benefit of the testator's own blood relatives. It comprised another one tenth of the so-called formula residue and the text emphasized above is repeated verbatim. The shares of these two

groups are referred to as portions of a formula residue because each such share is something very different from a like fraction of the true residuary estate. The testator's formula specifically excluded certain property and specified the deductions to be made. (See *Matter of James,* 189 Misc. 24, 28.) The will does not contain any express disposition of the remaining eight tenths of that theoretical fund. The fifteenth paragraph of the codicil disposed of the actual residuary estate.

It should be noted at the outset that neither the thirteenth nor fourteenth paragraphs contain any direction to *pay* " taxes * * * and like charges." The true residuary clause makes no reference of any kind to taxes. Had the testator directed his executors to pay " all * * * taxes " and had he then given to the residuary legatee only what remained after payment of all taxes, petitioner's argument might rest upon a solid foundation. The testator, however, made no such direction. It is true that the formula residue was created on a basis which took into account all estate taxes paid by the executors, but the formula residue was not an actual fund that was separately carved out and disposed of completely and separately. It must be understood that what the testator was attempting in the thirteenth and fourteenth paragraphs was the admeasurement of equal gifts to two groups, his own relatives and his wife's donees. He could have used any kind of a measuring rod that produced the result he had in mind. The formula used by him could have included in the gross fund properties not owned by him or could have provided for the deduction of sums which did not represent his obligations at all. What the testator did in each paragraph was to dispose of a small fraction of something less than his residuary estate. The properties that were to be included or excluded in the computation that fixed each gift, were not by this fact alone eliminated from or comprehended in any other gift or fund. The deductions to be made in the computation of legacies to these classes, were not thereby allocated as charges against the beneficiary of the residuary estate, which was disposed of in an entirely separate paragraph. The fact that these two groups were to receive portions of a fund from which estate taxes had been deducted in the process of its constitution, does not mean that other legatees or beneficiaries are likewise to receive gifts free from any tax burden.

Estate taxes paid by a fiduciary must be equitably apportioned among the persons benefited " except in a case where

a testator otherwise directs in his will '' (Decedent Estate Law, § 124). The direction against apportionment must be clearly expressed in the will '' and in the absence of a clear and unambiguous direction against apportionment, the mandate of the statute must prevail.'' (*Matter of Mills,* 272 App. Div. 229, 233, affd. 297 N. Y. 1012; *Matter of Kalik,* 179 Misc. 872, 875; *Matter of Durkee,* 183 Misc. 382, 387; *Matter of Merrill,* 67 N. Y. S. 2d 324, 325.) The will and codicils of this testator contain no explicit direction against apportionment of taxes or for payment of taxes out of the true residuary estate. No such direction can fairly be implied from the terms of the will or codicils. The process by which petitioner seeks to imply the direction against apportionment serves only to emphasize the lack of any clear and unambiguous direction in the will. Starting with legacies to two groups of beneficiaries, petitioner must build a series of inferences to arrive at the conclusion that a wholly separate paragraph disposing of the residuary estate, which contains not one word relating to taxes, nevertheless manifests a clear intent that all taxes must be paid out of the true residuary estate. The express directions for allocation of taxes in other instances indicate that when the testator actually intended to charge taxes against a particular fund, he understood how to express such a direction in clear text. In respect of taxes chargeable against nontestamentary gifts, the testator either took no thought of the matter, or having considered it, decided to let the statutory rule prevail. In any event, the court cannot supply what the testator omitted, and the rule of the statute becomes applicable.

Petitioner's attempt to introduce extrinsic evidence in aid of construction is met by objection on the part of the residuary legatee. Petitioner seeks to prove that at the time the testator created the trust of $100,000 for Mrs. Larson, he made an outright gift of a like sum to another sister of Mrs. James and subsequently gave a third sister the same amount; that petitioner's wife was one of the primary objects of the bounty of the testator and his wife, receiving from them a residence and periodic gifts of substantial amounts of money; that the testator and his wife approved petitioner's ceasing to practice his profession of the ministry on a remunerative basis and devoting himself to work in the ministry without remuneration and they continued making gifts for the support of the family so that this work could be carried out. Petitioner's proffered evidence is not designed to shed any light upon any particular expression

of the testator in his will. The evidence tends rather to supply something that is wholly lacking in the will. The court may read a will in the light of relevant surrounding circumstances and the setting often gives new color to words used in the will. The intention of the testator, however, must be found in the text of the entire will. The court may not read into the will an intent which is neither expressed nor necessarily to be implied from the language used by the testator. (*Matter of Tamargo*, 220 N. Y. 225, 231; *Matter of Nelson*, 268 N. Y. 255, 258; *Central Union Trust Co.* v. *Trimble*, 255 N. Y. 88, 93; *Matter of Ittleson*, 197 Misc. 786.) Moreover, the clear direction which is necessary to override the mandate of section 124 must be found in the will itself and not in the unattested declarations or conduct of the testator. (*Matter of Merrill*, 67 N. Y. S. 2d 324, 326, *supra*.)

The court accordingly holds that the proffered evidence is not admissible. There being no clear direction in the will respecting allocation and payment of estate taxes on nontestamentary transfers, the mandate of the statute requires an equitable apportionment of the taxes against the *inter vivos* fund.

Submit, on notice, decree accordingly.